# LAMBERT H. THIESS

## *vs.*

# MARY C. THIESS.

*Divorce: adultery; burden of proof; sufficiency and quality of evidence; presumption of innocence.*

On a bill for divorce, on the ground of adultery, the burden of proof is upon the complainant, and the evidence must establish affirmatively that actual adultery was committed.     p. 295·

Direct proof by eye-witnesses, however, is not required; yet where it is sought to prove adultery by circumstantial evidence, the latter must lead to the conclusion of guilt by fair inference, and as a necessary conclusion.        p. 295

The presumption of innocence attains in civil as well as in criminal cases, where the issue involves a charge of moral turpitude.        pp. 295-296

Where facts relied on to prove adultery may as well import innocence as guilt, they must be held to import innocence. p. 297

The proof must be clear, satisfactory and convincing, to overcome the presumption of innocence.        p. 297

*Decided December 2nd, 1914.·*

Appeal from the Circuit Court of Baltimore City. (Duffy, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*Geo. W. Cameron,* for the appellant.

*Chas. Lee Merriken,* for the appellee.

Briscoe, J., delivered the opinion of the Court.

The bill in this case was filed on the 12th of February, 1913, by a wife against her husband, for a divorce *a vinculo matrimonii,* on the ground of adultery.

By the fourth paragraph of the bill, it is averred, that the plaintiff ever since her marriage has conducted herself as a chaste, dutiful and affectionate wife, but that the defendant, Lambert H. Thiess, on divers occasions, has assaulted and beaten her, that, heretofore, to wit, on or about the eighth day of July, 1912, she discovered that her husband had been consorting with lewd and abandoned women and that from and after this date, she refused to live with him, and that her separation has continued since that date.

By the fifth paragraph, it is averred, that on or about the eighth day of July, 1912, suspicions which she had previously entertained respecting the conduct of her husband were confirmed and on or about this date, she discovered that her husband had committed the crime of adultery with one Anna Vitak and other lewd and abandoned women whose names are unknown; that she has not lived with her husband since

the discovery of the adulteries and has not condoned or forgiven his offenses.

The bill then prays for a divorce *a vinculo matrimonii,* on the ground of adultery, the care and custody of the infant children, their support by the husband, permanent alimony and for general relief.

On the 24th of February, 1913, the defendant answered the bill, denying the allegation that he had been guilty of the acts of adultery as charged in the bill and also denying each and all the material averments contained therein.

By the fourth paragraph of the answer it is alleged that any struggles of the plaintiff to support either herself or the children are entirely the result of her own wishes and determination, since on the date therein stated, this defendant was driven from the home that had been bought and paid for by the efforts of the defendant and given to the plaintiff, and at that time, he was informed by the plaintiff, that she wanted neither his presence, nor his support. That it has always been his desire to live with and support the plaintiff and his children and is now his desire, but that he is restrained from so doing by the plaintiff.

The fifth paragraph of the answer further avers, that in addition to the premises 2106 E. Madison street, which was bought by the defendant and given to the plaintiff sometime ago, that recently the plaintiff has acquired the premises 2122 E. Monument street where she is conducting a grocery store to advantage and profit.

The case was heard upon bill, answer and proof, and from a decree of the Circuit Court of Baltimore City granting an absolute divorce, permanent alimony and the custody of the children, this appeal has been taken.

The plaintiff and defendant were married on the 22nd day of June, 1887, in the City of Baltimore and lived together as husband and wife, until the 8th day of July, 1912. Upon this last named date, after a violent and turbulent interview between the parties, resulting in an announcement

by the wife that she would not live with him any longer, the defendant left the home and they have not lived together since. The issue of the marriage consists of five children, the oldest being about eighteen years old, and the youngest about eight.

The single question in the case, is whether the charge of adultery as alleged in the plaintiff's bill, is sustained by the proof, as disclosed by the record. In other words, whether the plaintiff has met the burden of proof required in such cases to entitle her to the relief sought by the bill.

It is conceded, that there is no direct proof whatever of the commission of adulterous intercourse between the defendant, and the co-respondent Anna Vitak, but it is contended, that there are such facts and circumstances proved by the record as to lead to the conclusion of guilt "by fair inference, as a necessary conclusion."

The general rules of law concerning cases of this character have been announced by the decisions of this Court, and cannot admit of any dispute. *Kremelberg* v. *Kremelberg,* 52 Md. 553; *Shufeldt* v. *Shufeldt,* 86 Md. 529; *Rasch* v. *Rasch.* 105 Md. 504; *Robbins* v. *Robbins,* 121 Md. 695; *Marshall* v. *Marshall,* 122 Md. 694.

In *Kremelberg's case, supra,* this Court, following the rules established by the English Ecclesiastical Courts, said:

"The burden of proof is upon the complainant, and the evidence must establish affirmatively that actual adultery was committed, since nothing less than the carnal act itself can lay the foundation of a divorce for adultery.

"Direct proof, that is, the evidence of eye-witnesses, is not required, for such is the nature of the offense and the secret and clandestine manner in which it is committed, that proof of this kind is in most cases unattainable; yet where it is sought to be inferred from circumstances, the latter must lead to the conclusion of guilt by fair inference, as a necessary conclusion."

All of the decisions declare, and the text-writers hold, that the presumption of innocence obtains in civil as well as in

criminal cases where the issue involves a charge of moral turpitude. *Mr. Jones* in his work on *Evidence,* says: "When fraud or criminal conduct is imputed, the decisions are to the effect that something more than a mere preponderance of evidence must be produced and that the proof must be clear and satisfactory." And in this, he is supported by numerous decisions of this and other Courts. *Conner* v. *Groh,* 90 Md. 674; *Lalone* v. *U. S.,* 164 U. S. 255; *U. S.* v. *American Tel. Co.,* 167 U. S. 224.

It has been repeatedly decided in this State that in cases of this kind Courts will not grant a divorce *a vinculo matrimonii* except upon clear, unequivocal and convincing proof, and upon a state of facts that satisfactorily established the guilt of the defendant.

Turning now to the record in this case, and examining the whole evidence, we are not satisfied that the plaintiff has made out a case, under the requirements of the established rules that entitle her to the relief sought by the bill.

There are two alleged facts, circumstances or incidents relied upon by the plaintiff to sustain her claim, as to the guilt of the defendant.

First, the witness, Elizabeth Glance, testified that she resided at 726 S. Dallas street, and that she knew Annie Vitak, who lived next door to her, on the same street (No. 724 Dallas street), that she had seen the defendant and Annie together several times. In answer to the following questions she testified as follows: 14 Q. Has he, the defendant, ever spent all night at the house 724 S. Dallas street? A. He certainly has. 15 Q. Can you tell us of any of these occasions? A. He came there in the evening and stayed all night around Christmas time, and about six or eight weeks ago, when that fire was in the alley, he stayed there all night. 16 Q. Were there any other occasions that you can recollect that he stayed there all night at the house 724 S. Dallas street? A. No, sir.

Secondly, the witness, Lizzie Ruminske, who resided on the second floor of the house, No. 724 Dallas street, in answer

to the question, "Have you ever seen the defendant at the
Vitak house at night, said, "One night a fire broke out, and
it was about two o'clock, and he ran out to see the fire, it was
on a Saturday night." She also testified, that she had seen
him at the house on other occasions, but had never seen
anything improper going on between them.

There were four other witnesses examined on the part of the
plaintiff, but as their testimony has no direct bearing upon
the material issue sought to be established, we find it unneces-
sary to go into an extended review of it.

It will be seen, upon an examination of the record that the
testimony of the two witnesses (Glance and Ruminske) as to
the presence of the defendant, at the co-respondent's home,
on the dates and on the occasions testified to by them, is not
only directly in conflict with that of the defendant himself,
but also in conflict with the evidence given by the defendant's
witnesses Caltrider and Caska.

The whole evidence on the part of the plaintiff when con-
sidered in connection with the evidence on the part of the
defendant is not sufficient, in our judgment, to establish the
plaintiff's case as required by the rules of law, herein stated
by us.

While the visits of the defendant, as a married man to the
home, of the co-respondent, a married woman, may be open
to criticism and censure, yet they are not sufficient, standing
alone, under the facts of this case, to constitute proof of adul-
tery or to establish adulterous relations between the parties,
on the 8th of July, 1912, as charged by the bill.

It is well settled that where the facts relied on to prove
adultery may as well import innocence as guilt, they must be
held to import innocence. The burden of proof rests upon
the plaintiff in cases of this character to establish the exist-
ence of the crime as charged. The proof must be clear, satis-
factory and convincing to overcome the presumption of inno-
cence and to establish adulterous intercourse between the
parties. *Jones on Evidence,* sec. 195; 14 *Cyc.* 681 and 684,
and cases there cited.

The language of JUDGE STOCKBRIDGE, in *Marshall* v. *Marshall,* in 122 Md., is applicable in this case. "Certain it is that the proof adduced by the plaintiff in support of her charges falls far short of what would be expected in the way of proof in any other character of case, and the granting of a decree upon such proof would be to relax materially the rules which have always obtained in Maryland in divorce cases. This Court however is not to be understood as saying that the defendant is guiltless of that which is alleged against him, only that the proof as adduced falls short of what is required as sufficient basis upon which to dissolve a marriage tie, and sever a relation which has existed for more than a quarter of a century."

For the reasons stated, we cannot concur in the conclusion reached by the learned Court below, on the record in this case, so the decree of the Court below will be reversed and the bill dismissed.

*Decree reversed, bill dismissed, with costs.*