# CIRCUIT COURT OF BALTIMORE CITY.

Filed July 10, 1916.

MARGARET S. DICUS
VS.
JACOB M. DICUS.

*David Ash* for plaintiff.
*M. N. Packard* for defendant.

DAWKINS, J.—

It is not usual to have a proceeding just like this one. The plaintiff on or about October 6, 1913, filed a bill for divorce a vinculo matrimonii and alimony on the ground of adultery (and alleging that the wife had been driven from home), which bill was dismissed on March 17, 1915, after hearing apparently upon a failure of proof. No appeal was taken. On March 23, 1916, a second bill was filed, alleging adultery, cruelty, desertion and abandonment, and asking for a divorce a vinculo matrimonii and also for divorce a mensa et thoro, alimony and counsel fee. The defendant, in answering the latter bill, claims in effect that the former bill in substance being the same as the latter and having been dismissed that the matter between the parties is *res adjudicata.* On the other hand, the plaintiff contends that she has offered such new and additional testimony as taken with the facts offered at the former hearing which have now been reproduced, entitles her to the relief she now seeks.

In any discussion of this case two things must be borne in mind:

1. The alleged bad reputation of the party Guyton, named as co-respondent; and

2. That the plaintiff abandoned the defendant without apparently assigning as a direct reason for so doing the alleged cruelty or adultery, though the evidence seems conclusive that she did object to the defendant's intimacy with Miss Guyton.

It would certainly be a dangerous and vicious practice for one *nisi prius* judge in a second case between the same parties with the same testimony and in a proceeding wherein the same relief (though addition, too) is sought to review the former conclusion. The only view in which a case so presented could be considered would be in the light of an undoubtedly new state of facts and proof.

I do not agree with counsel's contention that it is a crime to make people live together. There is no more sacred contract than that of marriage. It is more than a contract, if people attach the sanctity to it that should be given to it. When once entered into it should not be lightly dissolved, though it might be better for people to live apart than to live together in discord. Be all these things as they may, courts should not be called upon to dissolve the bonds save for the very gravest reasons.

Let us consider the alleged new testimony offered. Whilst there is some conflict as to the reasons for the defendant and Miss Guyton going to the country together, the circumstances of being in the house, alone, etc., would it be necessary for these people to go to the country to do an improper act when the defendant was living in the house

with the woman? Could the days in the country give any more opportunity for improprieties than living in the house? The facts of living in the same house and a trip to Todd's Park were in the other case, as also that of seeing the Guyton woman come out of the Dicus house at night. Certainly there was in the other case the fact of the wife being opposed to the defendant going with Miss Guyton. The insistence on unnatural practices seems to have been long before the separation. They are not said to have taken place, but only requested. The husband denies anything of the kind. The wife does not give these things as ground for leaving the husband. The testimony of Mrs. Wroten as to the "hugging and kissing" between Mr. Dicus and Miss Guyton loses much of its point when we are told by her that she never saw anything improper enough in the Guyton house to prevent her from going to it, and that she "never heard nothing." All of the testimony of Mrs. Wroten is denied moreover by Mr. Dicus and Miss Guyton. There is no denial of the fact that the wife left her husband four times. Certainly on one of these occasions she left the house when he was not at home. She went to Wilmington without telling him. Every detail of those separations was told before Judge Elliott and yet he did not deem it proper to grant a partial divorce in lieu of the divorce a vinculo matrimonii prayed for at that time. After each of the separations the husband came after the wife. She says he always furnished the house, but he would not walk with her or take her anywhere, that he wanted a younger person, etc. That he slapped her and used ugly language toward her. The home seems to have been kept open for the wife to return during a long period. The last separation does not seem to have been caused by any special misconduct on the part of the husband.

The conduct of the husband was not such as to inspire a continuation of love and affection, but did that of the wife tend to make the home what it should have been? They lived together for twenty-four years, during which time there seemed to have been numerous differences. Many of them may have been caused by the husband's fondness for Miss Guyton. The proof of the bad reputation of the last named

person is not conclusive, though the husband should have refrained from being with her if the wife objected.

The fact that Miss Guyton was an orphan would hardly justify his being with a person with whom the wife objected to his associating. There does not seem to have been any direct request, however, made that he refrain from being with her.

The essential facts of this case were presented at the former hearing and the bill was dismissed. That should stand as the law of the case, but giving the new testimony the fullest consideration and taking it in connection with that offered at the former hearing, the question to be determined is whether the plaintiff is entitled to any of the relief sought. There is nothing new that would justify the granting of a divorce a vinculo matrimonii on the ground of adultery.

The burden of proof is on the plaintiff and the evidence must establish affirmatively or by fair inference that the act has been committed. There is a presumption of innocence to overcome which presumption there must be clear, convincing and satisfactory proof.

124 Md. 292, Thies vs. Thies.

The opportunities for wrong and the suspicious circumstances do not exist in this case such as are detailed in cases like Shufeldt vs. Shufeldt, 86 Md. 521.

A divorce a mensa et thoro can be granted for desertion, abandonment or cruelty. There must be an intention to abandon. Separation and intention to abandon must concur. The husband's actions in this case would rather show that he intended her to return. The reasons given by the wife for leaving do not seem to justify her leaving home. A recent case very much in point is that of Hubbard vs. Hubbard, 127 Md. 622; also see Lynch vs. Lynch, 33 Md. 328.

The cases relied on in regard to cruelty of treatment, such as Sharp vs. Sharp, 105 Md. 581, present an entirely different situation from that presented in this case. Petulance of temper, a single act of violence or mental suffering are not sufficient causes.

Harlan on Domestic Relations, page 34, and cases there cited.

In this case it is unfortunate that the wife should need assistance. This

456

could well be provided by the husband in view of the long continuance of the marital relations, no matter which of the parties is wrong, but the Court can not compel the husband to render support unless the proof justifies it. The wife has shown no desire to return to the husband. The husband has not made any recent effort to have her come to him or to provide a home for her. Both seem at fault. The case has been thus fully discussed on account of its somewhat peculiar character and because of the able and instructive arguments of counsel, but there is a failure of proof to justify granting the relief sought.

The bill will be dismissed, the costs to be paid by the defendant.