## STANDISH McCLEARY

*vs.*

## IDA D. McCLEARY.

### *Divorce—Adultery.*

A divorce will not be granted on the ground of adultery except upon clear, unequivocal, and convincing proof.

pp. 661, 664

The testimony of detectives, in support of a charge of adultery, is entitled to but little weight if uncorroborated by any circumstances.                                                     p. 663

On a bill for a divorce against a physician, on the ground of adultery with a patient whom he was treating for syphilis, *held* that the evidence was insufficient to support the charge.

p. 663

*Decided March 22nd, 1922.*

Appeal from the Circuit Court No. 2 of Baltimore City (STUMP, J.).

Bill by Ida D. McCleary against Standish McCleary. From a decree for plaintiff, defendant appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Eben J. D. Cross* and *W. Irvine Cross,* for the appellant.

*Milton Dashiell,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

Ida D. McCleary, of Baltimore City, on the 11th day of January, 1921, filed in Circuit Court No. 2 of Baltimore City, a bill for divorce *a mensa et thoro* from her husband, Standish McCleary, on the ground of cruelty of treatment and adultery.

Subsequently, on the 28th day of March, 1921, she filed an amended bill, wherein she charged adultery alone, between January 1st, 1920, and January 11th, 1921, with a woman named, and by this bill she asked to be divorced *a vinculo matrimonii* from her husband, on the ground of adultery, as charged in the amended bill.

By the first paragraph of the bill it is averred that on the 4th day of May, 1904, she was married to the defendant, Standish McCleary, with whom she resided in the City of Baltimore until the 11th of January, 1921, and that as a result of the marriage three children were born to them, viz: John W., now 16 years of age; Anna Katherine, 14 years of age; and Standish, about 11 years of age, all of whom are now living.

By the second paragraph it is further averred that, although her conduct towards her husband has always been kind, faithful and affectionate, he has at different times since their marriage, to wit, between the first day of January, 1920, and the 11th day of January, 1921, committed the crime of adultery, and that she has not lived or cohabited with him since she discovered the adultery.

The defendant's answer, filed on the 8th of April, 1921, denies the charge of adultery contained in the bill, and while the defendant admits the plaintiff has always been a chaste wife, he, at the same time, denies that she has been kind or affectionate towards him, and alleges that her selfish conduct has made his home most uncomfortable and has filled him with anxiety as to the future of his children.

The case was heard upon the bill, answer and proof, and from a decree of Circuit Court No. 2 of Baltimore City, dated the 14th day of November, 1921, granting the plaintiff a divorce *a vinculo matrimonii* from the defendant, also permanent alimony and the custody of the children, this appeal has been taken.

The record, it will be seen, is a voluminous one, covering over three hundred pages of testimony, and a large part of

which is of such a character as to forbid its recital in detail, or to be presented in any court.

The single question presented in the case is a narrow one, and it is this: Does the proof disclosed by the record sustain the charge that the defendant committed adultery with the woman named, between January 1st, 1920, and January 11th, 1921, as charged in the bill.

The rules of law controlling cases of this character have been settled and announced by this Court in a number of cases.

In *Kremelberg* v. *Kremelberg,* 52 Md. 553, it was held that the burden of proof was upon the complainant, and the evidence must establish affirmatively that actual adultery was committed, since nothing less than the carnal act itself can lay the foundation of a divorce for adultery.

In *Thiess* v. *Thiess,* 124 Md. 296, the Court said: "It has been repeatedly decided in this State that in cases of this kind courts will not grant a divorce *a vinculo matrimonii* except upon clear, unequivocal and convincing proof, and upon a state of facts, that satisfactorily establishes the guilt of the defendant.

In *9 A. & E. Encl. of Law,* 750, it is said, as supported by authority, "The circumstances, when reviewed together, must be incompatible with innocence, and if reasonably capable of two interpretations, that interpretation which favors innocence will be adopted, but guilt will be inferred where it is impossible to reconcile the testimony with any theory of innocence. The evidence must be complete, satisfactory and convincing, and consistent, with the hypothesis that the adultery was committed." 14 *Cyc.* 681; *Shufeldt* v. *Shufeldt,* 86 Md. 528; *Rasch* v. *Rasch,* 105 Md. 506; *Loveden* v. *Loveden,* 4 Eng. Ecc. 461.

The parties to this controversy were married on the 12th day of May, 1904, in Baltimore City, and they lived together as husband and wife until the 11th day of January,

1921, when she left his home, and she has lived apart from her husband since that date.

The specific charge relied upon by the plaintiff for the relief sought by the bill, is adultery with the woman named, between January 1st, 1920, and January 11th, 1921.

The proof shows that Dr. McCleary, the defendant, is a prominent physician in the City of Baltimore, in active practice, and engaged professionally at the Baltimore City College of Dental Surgery, at Mercy Hospital, and at the University of Maryland.

Dr. Lockwood, who was associated with the defendant at the Mercy Hospital, Baltimore, testified that he had known Dr. McCleary professionally for over twenty-five years, that he was particularly active in his profession, was recognized as very efficient in his work, and was relied upon by others as an authority upon pathological work.

Dr. Heck testified that he had known Dr. McCleary for a number of years, and that he had always found him to be an upright man and a man of high character, that he had taught him at school and he regarded him as trustworthy, a fine gentleman and a good doctor.

The testimony also shows that the alleged adulteress was a patient of Dr. McCleary, and was under treatment by him for syphilis. She was also treated by Drs. Simon, Judd and Heck for the same disease. Some of the tests proved positive and others negative. There were three or four treatments with salversan by Drs. Judd and McCleary, in the latter's office, and it was after one of these treatments, which left her unfit to walk home, that the defendant drove her home in his automobile.

The charges of adultery, in this case, it will be seen, are sought to be established by the testimony of the wife, the daughter, and certain detectives employed by the wife.

There is no positive or direct testimony in the case of the fact that adultery was committed, but the court is asked to infer, from certain circumstances set out in the record, that

the parties were guilty as charged. The proof is entirely circumstantial and does not measure up to the kind of evidence that leads to the conclusion of guilt, by a fair inference from it, or such proof as is required, under the authorities, to show that the parties were guilty of committing adultery.

The testimony of the defendant and the alleged adulteress is set out in the record, and they both positively deny the commission of any act of adultery, and they also deny the existence between them of anything more than the relation of doctor and patient.

The testimony of the wife is based entirely upon alleged telephone calls and of meetings between the defendant and the alleged adulteress outside of his office, and of rides with him in his automobile in broad daylight. It rests entirely in suspicion and jealousy, and it does not in any way support the charge of adultery set out in the bill.

The testimony of the detectives is unreliable and does not connect the defendant with the offense. It is not corroborated by any circumstance in the case, and is therefore entitled to but little weight in the determination of the case. *Marshall* v. *Marshall,* 122 Md. 694; *German* v. *German,* 137 Md. 438; *Robins* v. *Robins,* 121 Md. 695.

The testimony of the little daughter, Anna McCleary, who was only thirteen years of age and who had been left at home on the afternoon of December 25th, 1920, to watch and to act as spy on her father, is unreliable and not supported by proper proof.

In 9 *R. C. Law,* section 105, it is said: "In view of the impropriety of calling children of tender age to testify against their mother to establish an offense against her chastity, and since the testimony of such children to acts which will naturally be construed by their prepossessions and immature and incorrect notions is of slight value, it has been held that a divorce should not be granted to the husband for the adultery of the wife upon the sole testimony of young children of the parties. The plaintiff must, of course, prove the acts of adultery charged."

But apart from this, the daughter's testimony is contradicted by the positive evidence of both the defendant and the alleged adulteress, that they did not go in the defendant's bed room at the time stated by the daughter, nor at any other time. It is admitted that they went to his library and there he played a record for her. It was a habit and custom of Dr. McCleary to take his patients and visitors to this room for musical entertainment, and this fact was well known to the plaintiff.

While the testimony of detectives and spies is competent, the law is well settled that it should be scrutinized carefully and should not be relied upon unless it is corroborated.

Another circumstance which reflects upon the improbability of the testimony as to sexual intimacy between the defendant and the woman named is the fact that during the time testified to by the witnesses, she was being treated for syphilis, and it would have been very dangerous for any one to have sexual intercourse with her.

In *Hurtzig* v. *Hurtzig,* 44 N. J. Eq. 329, the Chancellor, in dealing with the question of precautionary tests, in cases of adultery, said that to establish adultery the circumstances must be such as to lead the guarded discretion of a reasonable and just man to the conclusion of guilt. The judgment must not be rash, moving upon appearances that are equally capable of two interpretations. If the circumstances, taken both singly and together, reasonably admit of two interpretations, that interpretation which favors innocence should be adopted.

Mr. Jones, in his work on *Evidence,* sec. 195, thus states the rule, as supported by authority, that when fraud or criminal conduct is imputed, the decisions are to the effect that something more than a mere preponderance of evidence must be produced and that the proof must be clear and satisfactory. 14 *Cyc.,* 681-684; 9 *Ruling Case Law,* secs. 105, 106.

In view of the clear and controlling decisions of this Court upon the burden of proof required in cases of this kind, we think no useful purpose would be served by a further discussion of them.

Reviewing all of the facts and circumstances disclosed by the record in this case, we are unable to hold that the testimony is sufficient to support a conviction of the defendant, and to establish adulterous relations and intercourse between the parties accused.

As this view disposes of the case, we find it unnecessary to discuss the testimony in detail or to further set it out in this opinion.

For the reasons stated, the decree of Circuit Court No. 2 of Baltimore City, dated the 14th day of November, 1921, must be reversed, and the plaintiff's bill will be dismissed.

> *Decree reversed, bill dismissed, the costs in this Court, and in the court below, to be paid by the defendant, Standish McCleary.*