## OLEVIA STERLING vs. GORDON STERLING.

*Adultery—As Ground for Divorce—Evidence—Alimony Pending Appeal—Costs and Counsel Fees.*

In a suit for divorce on the ground of adultery, *held* that the evidence as to defendant's clandestine meetings with the co-respondent, her deceased daughter's husband, her misstatements in regard thereto, her insistence on continuing her association with him, and his visits to her after plaintiff compelled her to leave his home, justified a finding of her guilt.    pp. 637-641

The testimony of the deputy sheriff of the county as to clandestine meetings between defendant and the co-respondent, as observed by him, was not in the same category as that of a hired private detective, and as such entitled to no more weight than that of parties to the suit, it appearing that such witness was a neighbor and friend of plaintiff, and it not appearing that he was employed or paid by the latter to secure evidence against his wife.    p. 641

While acts occurring after the filing of the bill of complaint are not alone sufficient to support a decree of divorce, subsequent acts of adultery, with the person named as *particeps criminis* in the bill, are admissible to explain or corroborate evidence already taken in reference to the acts originally charged, or to nullify the effect of condonation set up as a defense.    p. 642

The burden of proof in regard to acts of condonation of the adultery is upon the defendant.    p. 642

In a suit for divorce, the wife may be allowed alimony pend-·
ing an appeal, and also costs and reasonable counsel fees in-
curred or paid by her in the prosecution or defense of an appeal.
                                                          p. 643

The petition and answer showing that the defendant wife,
the appellant, had no such independent means as to remove the
case from the operation of the general rule in this class of cases,
and the testimony showing nothing to the contrary, *held* that
an order was erroneous which dismissed a petition by the wife
for an allowance of alimony pending appeal, the costs of the
appeal, and counsel fees for its prosecution, and holding that
the husband should not be required to pay in advance the costs
of appeal and that this should be left to the Court of Appeals.
                                                  pp. 643, 644

*Decided May 2nd, 1924.*

Appeals from the Circuit Court for Somerset County, In
Equity (DUER, J.).

Bill for divorce by Gordon Sterling against Olevia Sterl-
ing. From a decree of divorce as prayed, and from an order
dismissing defendant's petition for costs of an appeal by her,
counsel fees for prosecution of her appeal, and continuance of
alimony pending the appeal, said defendant appeals. Decree
affirmed and order reversed.

The causes were submitted on briefs to BOYD, C. J.,
THOMAS, PATTISON, URNER, ADKINS, OFFUTT, and DIGGES,
JJ.

*Ellegood, Freeny & Wailes,* for the appellant.

*Clarence P. Lankford,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

This case contains two appeals in one record. The bill of
complaint was filed in the Circuit Court for Somerset County
on June 30th, 1922, by Gordon Sterling, the appellee, against
Olevia Sterling, his wife, the appellant, in which it is alleged
that the defendant, Olevia Sterling, on divers days and times

since the marriage, to wit: between the month of September, 1921, and the filing of the bill of complaint has been guilty of the crime of adultery with one Willie Mason, alias "Jack" Mason, in said Somerset County, State of Maryland; that the complainant has not cohabited with the defendant since he has discovered her said adulteries.

The prayer of the bill is, that he may be divorced *a vinculo matrimonii* from the said defendant, Olevia Sterling.

On July 10th, 1922, the defendant by her attorneys, Miles & Myers, filed her petition in said court praying for alimony *pendente lite* and counsel fees; whereupon the court passed a conditional order allowing same.

Subsequently the said attorneys filed their petition and "Exhibit A," alleging that the defendant Olevia Sterling desired to abandon her defense, and asked leave to withdraw the petition of July 10th filed by them on behalf of the defendant, and that their appearance be stricken from the record.

Exhibit A referred to is as follows:

"Crisfield, Md., July 24th, 1922.

"Geo. Myers,
    "Princess Anne, Md.
"Dear Sir:

"In regards to the case I am going to drop proceedings. My husband says he is willing to let me have my furniture, so it isn't necessary to proceed further.

"Sincerely,
            "Mrs. Olevia Sterling,
                    "Crisfield, Md."

On August 1st, 1922, the court passed a decree *pro confesso* against the defendant, Olevia Sterling, with leave to the complainant to take testimony in support of the allegations of his bill. The testimony on behalf of the complainant was taken *ex parte* and filed November 1st, 1922. Later, on January 8th, 1923, upon the petition of the defendant, through new attorneys, she was given leave to answer the bill of complaint, to re-call the complainant's witnesses for cross-

examination, and with leave to both parties to take such further testimony as they might desire. On the above date the defendant also filed her answer, in which she denies the adultery alleged in the bill of complaint, and alleges that after June 30th, 1922, the day on which the bill of complaint was filed, and until on or about August 7th, 1922, she and the complainant had lived together in their home, and during that period had cohabited as husband and wife.

After the taking of testimony by both parties, and cross-examination, by counsel for the defendant, of the witnesses who had previously testified on behalf of the complainant, the court passed a decree divorcing *a vinculo matrimonii* the complainant, Gordon Sterling, from the defendant, Olevia Sterling. From this decree the defendant, Olevia Sterling, has appealed. This constitutes the first appeal. The second appeal is also by the defendant, Olevia Sterling, from an order of the same court, dated September 20th, 1923, dismissing the petition of the defendant, in which the said defendant prayed an allowance for costs in the Court of Appeals and counsel fee for prosecuting her appeal in said Court, also a continuance of alimony pending the appeal.

At the time the testimony was taken the complainant, Gordon Sterling, was fifty-three and his wife, Olevia Sterling, thirty-nine years of age. They were married on August 28th, 1900, and so far as the record discloses had lived together contented and happy as husband and wife, in the home provided by and belonging to the husband, for a period of over twenty years, or until some time in September, 1921.

They had one child, a daughter, Grace, who in the early part of 1921 married the said Willie or Jack Mason, the co-respondent named in the bill of complaint. After the marriage of the daughter, Grace, she and her husband made their home with her parents, and continued to live with them until Grace was taken to the hospital in Crisfield, about six weeks prior to her death, which occurred on September 18th, 1921. During the time the daughter was in the hospital the son-in-law, Willie or Jack Mason, remained in the home of

his wife's parents and continued to stay there for a period of about two weeks after his wife's death.

The law governing this class of cases is well settled, and has been laid down and often repeated in the former decisions of this Court.

The single question for our decision is whether the charge of adultery, as alleged in the bill of complaint, is sustained by the proof as disclosed by the record.

It is conceded that there is no direct proof of the commission of the adulterous intercourse between the defendant, Olevia Sterling, and the co-respondent, Willie or Jack Mason.

In divorce cases, where the alleged cause is adultery, it is exceptional to find testimony of witnesses directly to the act of illicit intercourse by the offending spouse.

The nature of the act is such that it is usually accomplished in a secret and clandestine manner, and rarely in the presence of an eye witness. As above stated, there is no direct proof in this case of the adultery charged, nor is such proof necessary; the law does not require proof of the adulterous act beyond a reasonable doubt. The burden of proof is on the complainant, and he must prove the facts upon which the charge rests with certainty, and the evidence of these facts must be clear and convincing, but when the facts and circumstances surrounding a particular case are so established, the court will draw from them such inferences as the every-day experience and observation of mankind will justly warrant.

This same principle has been repeatedly stated and applied by this Court. *Kremelberg* v. *Kremelberg,* 52 Md. 553; *McCleary* v. *McCleary,* 140 Md. 659; *Thiess* v. *Thiess,* 124 Md. 292; *Pattison* v. *Pattison,* 132 Md. 362; *German* v. *German,* 137 Md. 424.

In *Kremelberg* v. *Kremelberg, supra,* JUDGE ROBINSON, speaking for this Court, adopts the language used in the case of *Loveden* v. *Loveden,* 4 Eng. Ecc. 461, as follows: "that the circumstances must be such as would lead the guarded discretion of a reasonable and just man to the conclusion;

for it is not to lead a harsh and intemperate judgment, moving upon appearances that are equally capable of two interpretations; neither is it to be a matter of artificial reasoning, judging upon such things differently from what would strike the careful and cautious consideration of a discreet man. The rational and legal inferences must be the same."

In the case of *Shufeldt* v. *Shufeldt,* 86 Md. 528, JUDGE BOYD thus states the rule: "It is not necessary in cases of this character that there be any one act proved which is conclusive of guilt, but the Court must consider the opportunity for the commision of the act, the conduct of the parties, and all circumstances, and then determine from the whole testimony whether it should convince unprejudiced and cautious persons of the guilt of the parties."

And it was said by JUDGE URNER in the case of *Dicus* v. *Dicus,* 131 Md. 89: "It is not necessary, and it is usually impossible, that direct evidence of the fact of adultery shall be offered. The offense may be proven by circumstances which justify the inference of guilt."

In *R. C. L.*, vol. 9, page 329, it is said: "The courts must, perforce, take such evidence as the nature of the case permits—circumstantial, direct or positive—and bring to bear upon it the experiences and observations of life, and thus weighing it with prudence and care, give effect to its just preponderance in weighing the effect of such evidence that it must be so clear and strong as to carry conviction of the truth of the charge, and that the circumstances must lead to it not only by fair inference, but as a necessary conclusion. When, however, adulterous disposition is shown to exist between the parties at the time of the alleged act, then mere opportunity, together with comparatively slight circumstances showing guilt, may be sufficient to justify the inference that criminal intercourse has actually taken place."

In the recent case of *Fassett* v. *Fassett,* 143 Md. 46, JUDGE OFFUTT said: "Naturally, there can be no fixed or rigid rule for measuring the force or the effect of the facts established in a case of this character, since the significance

of each of a group of facts depends so largely upon its relation to the other facts which accompany it, and conduct, which under certain circumstances may seem innocent and harmless, could under other circumstances justify a more serious and sinister inference. And while, as we have repeatedly stated, in cases involving the charge of adultery the complainant must establish the facts upon which the charge rests by clear, convincing and satisfactory proof, yet when those facts are thus established the Court will draw from them all such material and obvious inferences conveyed by them as are consistent with common experience."

It will be noted that the adultery here charged is between the defendant, Olevia Sterling, and her son-in-law. Conduct between people bearing this relationship must be viewed with the relationship in mind, and circumstances which might be sufficient to lead to a conclusive inference of guilt in respect to parties bearing a different relationship would be entirely harmless and innocent and perfectly proper conduct between a woman and her son-in-law.

The court below was convinced that adultery had been committed between the defendant and the co-respondent, and after a careful examination of a lengthy record and giving full effect to the relationship between the parties, we are unable to say that the court below erred.

A careful examination of the testimony will convince an unprejudiced and cautious mind that the following facts have been conclusively established; that the complainant and defendant had lived together in peace and contentment for more than twenty years without the slightest evidence of domestic trouble; that the co-respondent came into their home as their son-in-law, and within a few months after his entry the first rift in their marital relations became evident; that the complainant became suspicious of the relations existing between his wife and his son-in-law before his daughter was taken to the hospital, and during the time of her stay in the hospital and up to the time of her death his suspicions were strengthened by the observance of the conduct of his

wife and son-in-law toward each other; that after the death of his daughter the son-in-law continued to live with his wife's parents about two weeks, and during this period the complainant saw the defendant and co-respondent in a compromising attitude on the porch of their home; that as a result of his suspicion he ordered the co-respondent to leave his house, and that after the co-respondent left the house of the complainant the defendant continued her clandestine meetings with the co-respondent over the repeated objections of her husband, often being seen in an automobile with the co-respondent and remaining away from her husband's home until late at night, frequently after midnight; that when the complainant would remonstrate with her in respect to these excursions with the co-respondent, the defendant would deliberately deny that she had been out with Mason, and this after she had been seen on many occasions with the co-respondent by the complainant and other witnesses; that this condition continued until the 29th day of May, 1922, at or about which time the complainant told his wife that she must give up Mason, or she could not longer live with him, the complainant. The complainant testified that his wife's answer to this proposal was, that "she intended to go with Mason just as long as she pleased, and that she never proposed to give him up as long as she lived and he lived." This conversation took place at the home of the complainant in the presence and hearing of the witness George B. Merrill, and is corroborated by that witness in the following manner: "Int. 4. Have you or not ever been present at a conversation between the said Gordon Sterling and his wife, Olevia Sterling, in which conversation the said Jack Mason was mentioned? And if so, please state when and where the conversation took place and what was said in that conversation. Ans. Yes, sir; I was at Gordon Sterling's home on one occasion when Gordon Sterling and his wife Olevia were talking about Jack Mason, and I think the conversation took place during the early part of June, 1922. I heard Mr. Sterling, the plaintiff, say to his wife, Olevia Sterling:

'Now, Olevia, you will have to take Jack Mason or me.' Then his wife, Olevia Sterling, replied to Gordon Sterling: 'You old fool, I don't want anything to do with you anyway, and I shall go with Jack Mason whenever I get ready, and I shan't ask you, either.' "

That after the 29th day of May, 1922, while the defendant remained in the home of the complainant until August 7th, 1922, she was compelled by the complainant to occupy a separate room from him, and that there was no sexual intercourse between them after May 29th, 1922; that during this period the defendant continued to meet Mason, the co-respondent, over the objection of the complainant; that she would endeavor to deceive him by telling him that she was going to various places, to which he had no objection, and then would clandestinely meet Mason in secluded spots, go automobile riding with him at night and return home at very late hours.

Without referring to the testimony in detail, it is sufficient to illustrate these occurrences by the testimony of the witness Lawson, the deputy sheriff of Somerset County. On direct examination he testified as follows: "Int. 5. Please state what you know and have observed of the association and relations existing between Mrs. Olevia Sterling, the defendant in this cause, and the said Jack Mason? In your own way please state fully? Ans. I have watched Mrs. Olevia Sterling and Jack Mason riding up and down the road on a number of occasions in an automobile between the hours of eight and ten o'clock at night. I have seen them together in this manner ever since the death of her child Grace. During all of the time I have seen them together every week, sometimes once a week, sometimes more; in fact, they were together so frequently I would pass them on the road and pay no attention to them. I have watched these two people and have seen the defendant hiding in a barn and behind trees waiting for the said Jack Mason, and on these occasions I have waited around, and finally the man Mason would approach in his car in the same section where

I saw her hiding. I have frequently been riding along the road in my car and would see the defendant on the side of the road, and she would dodge in the bushes until I got by. I have frequently seen her leave her home, cut across fields, and the same evening I have seen her out in a car with Mason. Int. 7. Please state whether or not their associations continued from the 29th of May, 1922, up to the 30th of June, 1922? Ans. Yes; they continued in just about the same way. During that month I took more particular notice than I had before, and I saw them together very frequently. Every night I looked for them I saw them. During that time on two nights I went out with Gordon Sterling looking to see if we could see them together. On one of these nights when we were looking for the defendant and Jack Mason we saw them along the edge of the woods. Mrs. Sterling was in the edge of the woods peeking out and looking for Jack Mason. In a little while Mason came along in his automobile. He saw me in my car and he didn't stop, but continued down a road known as the old Dower Lawson Road. I followed him and passed him. After I passed he stopped his car, turned around and went back to the woods where I saw Mrs. Sterling hiding. When he got there he stopped, turned his lights out on his automobile, and this time he got Mrs. Sterling in his car and they went off, and I lost them. Mr. Gordon Sterling was with me on that occasion, the plaintiff in this case, and when he saw them go off together he asked me for my pistol, stating that he wanted to kill the pair. I, of course, did not give him the gun, but told him to keep quiet and let the law take its course."

The witness, Samuel T. Ward, who is a brother of Olevia Sterling, testified as follows: "Int. 4. Please state whether or not you have ever seen the said Jack Mason and Mrs. Olevia Sterling, the defendant in this cause, together, and if so, please state when, where and the circumstances under which you saw them together. Please state fully? Ans. Yes, I have seen them together several times. The first time was last June, 1922, on Chesapeake Avenue, Crisfield, Md.,

near Hundley's store. Mrs. Sterling was getting in Jack Mason's automobile, and I approached Mrs. Sterling and told her not to get in Mason's, but I would take her home in my car, but she replied that 'it was not any of my business, and she was going with Mason.' She got in the automobile and she rode off with this man Mason, and this all happened about eight o'clock at night. I have seen them together on numerous other occasions, once I met them in Snow Hill, Maryland; Stockton, Maryland; Girdletree, Maryland, and each time they were together in an automobile driven by Jack Mason. The action and association of these people have been the talk of the community. Int. 5. Are you related to either Gordon Sterling or Olevia Sterling? Ans. Mrs. Olevia Sterling is my sister."

It is contended by the defendant that the testimony of the witness Lawson should be given slight weight, because it is in the same class as testimony of detectives in this character of case. While we have held that testimony of hired private detectives is entitled to no more weight than that of the parties to the suit, as they are all interested parties (*German* v. *German*, 137 Md. 438; *McCleary* v. *McCleary, supra,* and authorities there cited), we do not think that the testimony of this witness is in that category; neither does it come within the reason of the rule as laid down in those cases. The evidence shows he is a neighbor and friend of the complainant, but fails to show that he was employed or paid by the complainant to secure evidence against his wife; and the fact that he happened to be deputy sheriff of the county at the time does not, in our opinion, place him in the class of private detectives. The testimony further discloses that after the defendant was compelled by the complainant to leave his home she continued to meet and associate with Mason, and that he visited her at the boarding house of the witness, Rachel A. Bradshaw, going to the defendant's room, which was also used by her as a bedroom, once or twice a week, and remained there alone with her on numerous oc-

casions until ten o'clock at night. The testimony just above referred to related to acts which occurred after the filing of the bill of complaint, and are not alone sufficient to support a decree for divorce, but it is competent to prove subsequent acts of adultery with the same person named as *particeps criminis* in the bill, either as tending to explain or corroborate evidence already taken in reference to the acts originally charged, or to nullify the effect of condemnation set up as a defense. *Wagner* v. *Wagner*, 130 Md. 346; *Carter* v. *Carter*, 139 Md. 265.

The only other question to be dealt with on the first appeal is the defense of condonation sought to be set up by the defendant. She testifies that during all the time she remained at her husband's house, from May 29, 1922, to August 7, 1922, he continued to have sexual relations with her, coming into her room and inducing her to come into his room for that purpose and that after she left the home of her husband on August 7, 1922, she, at his request, returned about twelve or fifteen times, and that on each of these visits sexual intercourse between them took place.

The only testimony to corroborate her in this respect is the testimony of the co-respondent, who testifies that he took the defendant to a place near the home of the complainant on these several occasions and returned for her after she had remained in her husband's house on each occasion for several hours. This testimony is positively contradicted by the complainant and a number of other witnesses, these latter testifying to the presence of the complainant away from his home every night during the period covered by the alleged visits of the defendant. It will be noted that the testimony of the defendant and Mason are that these visits took place at night, but that no specific date is given for any one of them.

If we exclude the testimony of the interested parties on this point, a careful examination of the whole record convinces us of the great improbability of the alleged acts of condonation. The burden of proof in respect to acts of con-

donation is on the defendant, and in our opinion she has totally failed to meet this burden.

Without further discussion of the testimony it is sufficient to say that we think the complainant has fully discharged the requirements placed upon him by the law and rules of evidence, and that the conceded and proven facts and the inferences properly deducible therefrom convince an unprejudiced and cautious mind of the guilt of the defendant.

It follows from what we have said that the decree of the chancellor must be affirmed on the question presented in the first appeal.

As stated, the second appeal was from an order of the lower court dismissing the petition of the appellant and refusing an allowance of alimony pending the appeal, the costs of the appeal, and counsel fees for prosecuting same.

"The general rule is that the wife is a privileged suitor in divorce cases, and if she is without an income competent for her support and the maintenance of the suit, living separated from her husband, the court will allow her alimony *pendente lite* and money to carry on her suit without inquiring into the merits." The above is a statement of the rule as laid down by CHIEF JUDGE BOYD in the case of *Hood* v. *Hood,* 138 Md. 355, and is supported by many decisions of this Court, some of which are collected and cited in that case. It is equally well established by authority that when the wife has independent means of her own for the purpose of support and to enable her to prosecute or defend her suit she is not allowed alimony *pendente lite. Hood* v. *Hood, supra.*

Under the rule and the reason therefor the court may allow the payment of alimony, pending an appeal, and costs and reasonable counsel fees incurred or paid by the wife in the prosecution or defense of an appeal to this Court.

There is no evidence in this case of the financial ability of the plaintiff or defendant other than the allegation in the aforementioned petition and the answer thereto by the appellee. Taking those portions of said petition and answer, which are not in conflict, as being true, they show that the

appellant has no such independent means of her own as will remove this case from the operation of the general rule in this class of cases.

The order of the lower court in dismissing the petition of the appellant, held "that this is not a case in which the plaintiff should be required to pay in advance the costs of the appeal by the defendant, and that the disposition of the costs of appeal should be left to the judgment of the Court of Appeals." We are of the opinion that the court below committed an error in passing such an order, and the same will be reversed.

After a full consideration of the whole case we are of the opinion that the appellant is entitled to alimony pending her appeal to this Court, to reasonable counsel fees, and that the appellee should pay the costs in this Court.

> *The decree of July 20, 1923, affirmed. The order of September 20th, 1923, reversed, and cause remanded, that an order may be passed in conformity with the views herein expressed. Costs to be paid by the appellee.*