# MAY IRMA BAILEY v. CLARENCE M. BAILEY, JR.

[No. 76, October Term, 1945.]

*Decided March 13, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Hewlett B. Cox* for the appellant.

*Edward D. Martin,* with whom were *Ralph Robinson* and *G. William Peppler* on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

On December 7, 1944, Mary Irma Bailey (appellant) filed in the Circuit Court No. 2 of Baltimore City a bill of complaint against her husband, Clarence M. Bailey, Jr. (appellee) in which she charged that appellee was guilty of the following offenses: (1) excessively vicious conduct; (2) failure to adequately support appellant for a considerable period of time; (3) that he was guilty of adultery with divers women, some of whom could be fully identified if it became necessary to do so; (4) that he abandoned and deserted her on the 6th day of December, 1944. She avers that her conduct has always been proper and above reproach, and prays: (1) for a divorce *a vinculo matrimonii;* (2) for a resumption of her maiden name; (3) for alimony *pendente lite* and permanent alimony; (4) for counsel fee and general relief.

Appellee, in his answer, denies these charges and calls for strict proof that her conduct has been proper and above reproach. The bill also charges that the parties were married on January 16, 1941, in Baltimore City, are residents of said city, and that no children were born of the marriage. These allegations are admitted in the answer.

The case was heard in open court on March 12, 1945, and concluded the same day. The court at that time stated that he would grant the appellant an absolute divorce on the ground of adultery, allowing permanent alimony and counsel fee, and permitting her to resume her maiden name. A decree was accordingly filed on the 14th day of March, 1945.

Thereafter, on the 10th day of April, 1945, appellee filed a petition in the case, in which he averred that the testimony theretofore taken tended to show that he committed adultery with one Madeline Moltz; that there was no allegation in the bill of complaint naming Madeline Moltz as a co-respondent; that he had no reason to summon her, and that therefore she was not in court when the testimony was taken; that he was wholly unprepared to offer

the testimony of Madeline Moltz and unable to secure her attendance at the hearing of the cause. The petition further, in substance, avers that if given an opportunity he could show that he was not in Baltimore at the time and place that the evidence tended to show he was when the act of adultery was committed by him with the said Madeline Moltz. The petition prayed, in part, that the decree be stricken out; that there may be a rehearing in the cause to let in the testimony which your petitioner lacked an opportunity to offer when the cause was heard. This petition was sworn to and the court passed an or der, dated the 10th day of April, 1945, for the appelant to show cause why the decree entered on the 14th day of March, 1945, should not be stricken out and a rehearing of the cause be granted as prayed. The chancellor added to the order the following: "Ordered this 10th day of April, 1945, the court will hear additional testimony any date counsel agree upon, and let final order hereon abide the taking of such testimony, notice being given to the opposite side."

This order was signed by the chancellor who heard the case. The case was taken up in open court on April 24, 1945, the parties hereto and their respective solicitors were present, and further testimony taken. Counsel for appellant then objected to the rehearing of the case, asserting that the court had no power, after decree, to take further testimony.

On the 26th day of April, 1945, the court passed the following order: "Ordered, by the Circuit Court No. 2 of Baltimore City, on the Court's own motion, this 26th day of April, 1945, that the Respondent, Clarence M. Bailey, Jr., be, and he is hereby given until 10 A. M. Friday, May 4th, 1945, to produce the corroboration of persons who saw him on the night of Friday, October 13, 1944, on the trip he claims to have taken with one William C. Bowen, to Westminister, Emmitsburg, Thurmont, Frederick, etc., and that the said William C. Bowen produce by the same time and date his "C" automobile ration registration, or copy of his application therefor,

with the opportunity to both sides to produce at that time any additional testimony desired by either; and it is further ordered that, in the meantime, the said Respondent, Clarence M. Bailey, Jr., pay all court costs in this case, including all additional Court costs incurred on his petition to take additional testimony."

From the order of court passed on the 10th day of April, 1945, granting leave to appellee to reopen the case, appellant appealed, which we will now consider.

The decree dated the 14th day of March, 1945, granting the appellant an absolute divorce, had not become enrolled. Code, 1939, Art. 16, Sec. 207. Section 209 of that Article provides: "Every petition for rehearing shall contain the special matter or cause on which such hearing is applied for, and shall be signed by solicitor or the petitioner himself, and the facts therein stated, if not apparent on the record, shall be verified by the oath of the party, or by some other person."

The matters set forth in the petition did not appear upon the face of the record, and the petition was sworn to.

In *Miller's Equity Procedure,* Section 285, it is said, in part: "Before a decree is enrolled it is entirely within the province of the court to revise it, the decree being subject to the control of the court until enrollment. It may be altered, revised or entirely revoked upon application to the court by petition."

And the same author, in Section 286, says, in part: "A rehearing is a new hearing and a new consideration of a case by the court in which the suit was originally heard, and upon the pleadings and depositions already in the case. A petition for a rehearing is the proper method of correcting, before enrollment, errors in a decree which are not evidently clerical or accidental. Upon an application for a rehearing, the matter rests in the discretion of the court, and no appeal lies from its action, whether the rehearing be refused or allowed. The proceeding is analogous to a motion for a new trial at common law. A motion for a rehearing does not suspend the operation of the decree. An application for a rehearing is made by

a petition. It is provided that every petition for rehearing shall contain the special matter or cause on which such rehearing is applied for, and shall be signed by solicitor or the petitioner himself, and the facts therein stated, if not apparent on the record, shall be verified by the oath of the party, or by some other person. No rehearing shall be granted after the enrollment of the decree or decretal order."

In *Long Contracting Co. v. Albert,* 116 Md. 111, at page 114, 81 A. 265, at page 266, Ann. Cas. 1913 B, 1,259, this court said: "There can be no question that until enrollment such decrees are entirely under the control of the court, and may be revised, modified, or revoked upon proper grounds shown. It is well settled, however, that a petition filed in the same proceedings, for a rehearing, and not an original bill, is the proper method of correcting, before enrollment, errors in a decree, not merely clerical or accidental."

Such a petition is addressed to the sound discretion of the court, and in the absence of abuse thereof no appeal will lie. *Zimmer v. Miller,* 64 Md. 296, at page 299, 1 A. 858.

"If the decree was by mistake, his claim to relief before enrollment was undoubted." *Herbert v. Rowles,* 30 Md. 271.

The petition in this case was filed before the decree of April 10, 1945, became enrolled. The matters it contained did not appear upon the face of the proceedings, and such matters there appearing, if established by proof, might well cause the court to think a mistake was made in the granting of the decree. The court properly passed his order granting a rehearing and it being a matter in its discretion, no appeal from its action will lie to this Court and the appeal from the order granting a rehearing is dismissed.

On May 10, 1945, the chancellor passed a decree which vacated and annulled the decree entered in the cause on the 14th day of March, 1945, and dismissed appellant's bill of complaint. From this decree appellant also appeals.

The only question pressed before this court was: Did appellee commit adultery? The other charges contained in the bill of complaint need not be considered.

The marriage of these parties was an unhappy one. From the first there was contention about money matters, bills, and the husband staying out late hours at night. In the fall of 1944 the appellant engaged a private detective to follow her husband and report to her what he might discover. Two dates are important in this case. One is the night of October 13, 1944, and early morning of the 14th, and the other is the night of November 1, 1944, and the early morning of November 2d.

The appellee, Mrs. Moore, and Miss Moltz, on the dates in question and for some time prior thereto, were employed at the Eastern Stainless Steel Corporation, an industry then engaged in war production work, in the southeast section of Baltimore County. It is well known, at that time, in order to save gasoline and automobile tires, an owner of an automobile was required to take co-workers to and from the place of their common employment. Appellee took these two young women with him to and from work. Louis J. Barth, a private detective, accompanied by Leo Zimmer, a brother of the appellant, went to the place of employment of appellee at 12.25 A. M., (really the morning of October 14, 1944). He testified he saw, at that time, Bailey leave there in his car, accompanied by two women. He followed them to the 1700 block Montpelier Street, where one of the girls got out. From there appellee continued to the 400 block North Rose Street, where he parked. The detective and Zimmer parked some 20 feet in the rear of the appllee's car. The girl whom appellee is said to have had with him, and who turned out to be Madeline Moltz, lived on Rose Street with her parents, and appellee's car was parked in front of her parents' home. Appellee was driving a Chrysler coupe, and in the back of the same is a window. Both cars had their lights off and the evidence does not show that there was any street light in close proximity. The detective says it was dark in appellee's car. He and Zim-

mer testified that they looked through the windshield of their car, through the window in the rear of appellee's car, 20 feet distant, in the dark, until 2.40 A. M., when the girl got out and entered her home, 428 North Rose Street. During that time, both the detective and Zimmer testified, neither appellee nor the girl got out of the car; that they saw them "loving up," embracing and kissing, and about ten minutes after this performance both slumped down in the seat out of view and that once in a while they saw "subject's head come up and then he would disappear from view. At 1.35 A. M. both Bailey and the girl came up into a sitting position and the girl adjusted herself and both began to "love up again." His testimony of what he saw on November 1, 1944 (really November 2, 1944) when he was also accompanied by Zimmer, is strikingly like the description of the performance on the night and early morning of October 13th and 14th. He saw Bailey at 12.15 A. M. leave his place of employment with the two girls; he followed him to the 1700 block Montpelier Street, where one girl got out, and appellee continued to the 400 block of North Rose Street, where he parked. He described on that occasion the same identical scene that he described as having occurred on the first date. At 2.40 A. M. the girl got out of the car and entered her home. On neither occasion, while he watched so long, and although he was accompanied by Zimmer, did he or Zimmer, or both of them, get out of their car, parked 20 feet in the rear of appellee's car, and go up to appellee's car and look in.

The other two dates on which the detective and Zimmer trailed the appellee in his car are unimportant, because appellee simply drove these women to their homes and did not stop at the Rose Street address except to immediately let Miss Moltz out of the car. On the two occasions referred to, the detective took notes which showed the hours and dates of the happening of the matters to which he testified, and he testified in court from these notes. At the rehearing he further testified that his notes were absolutely correct and the things he testi-

fied to did happen on the dates he gave. Zimmer did not remember the dates, but knew they were in October and around November, but corroborated the evidence given by the detective.

There is evidence in the case that in the summer of 1943 appellee had an automobile accident around 3 o'clock in the morning and with him at that time was a Miss Beckman, but unless the testimony in the case is sufficient to establish adultery on the two occasions referred to, this evidence becomes immaterial because appellant knew of this accident in the early morning when Miss Beckman was with the appellee, and lived with him thereafter until December 6, 1944, and hence his misconduct, if any, was condoned. There was other evidence in the case that appellee, for a couple of weeks, took these young women to work after he ceased to work there, and evidence that he stayed out late at night.

Whether the evidence submitted to the chancellor, on which he based his decree of March 15, 1945, on the ground of adultery, was sufficient to warrant a cautious and careful conclusion that an act of adultery had been committed, we will not pass upon, except to say that the line demarcation was so shadowy as to be almost indistinct. We will base our conclusion on all of the testimony, taken before and at the rehearing.

It was proven in the case, beyond a shadow of doubt, that William C. Bowen and the appellee, who seems to have dealt in antiques, left Baltimore in Bowen's car around 9:30 A. M. on October 13th. They drove to Westminster and from there to Union Mills, in Carroll County, to see Arthur L. Hollinger, a dealer in antiques. Appellee and Bowen had previously bought two chairs from Hollinger and were returning them. Hollinger testified that they were at his place between 2 and 3 o'clock in the afternoon. He accepted the returned chairs and entered on his book which he kept that they were returned on October 13, 1944. This book was offered in evidence. From there they returned to Westminster, got some gasoline, and went to Emmitsburg and looked

around for some antiques.  At Emmitsburg they took the road to Frederick and in passing through Thurmont they got off the main road and their automobile became stuck in the mud.  Bailey got out of the car and went to the home of Calvin S. Martin nearby.  His wife opened the door and he told her his predicament.  She called to her husband and to her son, who was then in the service but home at the time on a furlough  The father and the son went in their car to where Bailey's car was stuck, and pushed it out.  Mrs. Martin says that when Bailey rapped at the door it was about their bedtime.  It was raining and terribly foggy.  Both Martin and his wife testified to these facts.  Bailey and Bowen proceeded to Frederick, where they got something to eat, and started for Baltimore.  It was so foggy that one of them had to lean out the window in order to see a short distance in front of the car.  They traveled at a very slow speed and got in Baltimore about 4 o'clock in the morning of October 14th. This testimony of the appellee, Bowen, Hollinger and Martin and his wife is an overwhelming contradiction of the testimony of the detective and Zimmer that the appellee was in a car on Rose Street with Miss Moltz at the time they testified to.  In addition to this, Miss Moltz and Mrs. Moore testified they waited for the appellee to come for them to take them to work on the afternoon of October 13th.  They waited until after 4 o'clock, the time their shift took over at their place of employment.  They then concluded that appellee was not going to work that afternoon and they went to a picture show, and, after the show, got something to eat and went home.  The evidence of the officials of the Eastern Stainless Steel Corporation shows that neither the appellee, Mrs. Moore, nor Miss Moltz worked on October 13th.  In view of this evidence taken at the rehearing, no man exercising a careful and cautious judgment could come to the conclusion that the appellee committed adultery with Miss Moltz on the early morning of October 14, 1944, in front of her house on Rose Street. If you cannot believe the detective and Zimmer on that

occasion, you cannot believe what they say happened on the early morning of November 2nd in front of 428 North Rose Street. *Falsus in uno, falsus in omnibus.*

Appellant testified that in the summer of 1944 she discovered lipstick on the plaintiff's clothes and also that she found contraceptives in appellee's automobile. There is no corroboration of this evidence at all in the record. This testimony is denied by the appellee.

In *Steinla v. Steinla,* 178 Md. 367, at page 373, 13 A. 2d 534, at page 536, Judge Offutt, speaking for this court, said:

"While this testimony indicates that Steinla is a man of loose and dissolute habits, it is not sufficient to support a finding of adultery. A finding of adultery affects four persons, the State, the injured spouse, the adulterer and the paramour. It directly and injuriously affects the paramour and the adulterer, and possibly indirectly affects children of the spouse and the adulterer. Because of the secret and clandestine nature of the offense it is rarely shown by direct proof, but must of necessity in most cases be proved by circumstantial evidence. Because of the stigma which the finding carries, and the possibilities of error inherent in proof of that nature, the general rule is that the quality of evidence required to establish it must be high, and its *quantum* sufficient to satisfy a reasonable mind of the truth of the charge. It need not be proved beyond a reasonable doubt, except where it is the subject of a crimianl prosecution, nevertheless to justify such a finding the evidence must be such as to exclude any reasonable possibility of innocence. * * * It must go beyond proof of facts merely justifying suspicion, and show facts inconsistent with innocence." See cases there cited.

"Where the finding must be predicated upon disposition and opportunity, since it affects two persons, the proof must show that the disposition was reciprocal and mutual. It is not enough to show that one only of the persons charged was disposed to the alleged adulterous act, or that one only was affected by a promiscuously adulterous disposition."

It was also said in that case: "It is apparent from this statement that for some time before this suit Steinla had been associating with women other than his wife un-der circumstances which justified a strong suspicion that his relations with them were immoral and improper, and, uncontradicted and unexplained, it cannot be said that the evidence is wholly insufficient to warrant a finding that he had been guilty of adultery."

The opinion says further: "It is true that the evidence of those facts was furnished by paid private investigators, and as this court has had occasion to observe, evidence of that character is inherently doubtful. *German v. German, supra* [137 Md. 424, 112 A. 789]; *McCleary v. McCleary,* 140 Md. 659, 118 A. 133."

In *Lang v. Lang,* 155 Md. 464, at page 471, 142 A. 485, at page 487, the court quoted from *Kremelberg v. Kremelberg,* 52 Md. 553: "The only general rule to be laid down on the subject, says Lord Stowell, 'is that the circumstances must be such as would lead the guarded discretion of a reasonable and just man to the conclusion; for it is not to lead a harsh and intemperate judgment, moving upon appearances that are equally capable of two interpretations; neither is it to be a matter of artificial reasoning, judging upon such things differently from what would strike the careful and cautious consideration of a discreet man. The rational and legal inferences from such facts must be the same'." See cases and authorities cited.

The court quoted *Thiess v. Thiess,* 124 Md. 292, 92 A. 922, and repeated in *Pattison v. Pattison,* 132 Md. 362, 367, 103 A. 977, at page 471 of 155 Md., at page 487 of 142 A.: "It has been repeatedly decided in this state that in cases of this kind courts will not grant a divorce *a vinculo matrimonii* except upon clear, unequivocal, and convincing proof and upon a state of facts that satisfactorily establish the guilt of the defendant."

The court again quoted from *Kremelberg v. Kremelberg, supra*: "The burden of proof is upon the complainant, and the evidence must establish affirmatively that

actual adultery was committed, since nothing less than the carnal act itself can lay the foundation of a divorce for adultery."

In *Wendel v. Wendel,* 154 Md. 11, at page 24, 139 A. 573, at page 578, the court said: "Although 'it is well settled that where the facts relied on to prove adultery may as well import innocence as guilt, they must he held to import innocence.' *Thiess v. Thiess,* 124 Md. 297.

"And the mere fact that a woman accepts marked attention from a man other than. her husband, in spite of the latter's objection is not in itself sufficient to prove adultery. *Rictor v. Rictor,* 139 Md. 697; *Thiess v. Thiess, supra.* * * * 'Mere evidence that there was an opportunity for illicit intercourse is held to be insufficient. Two facts must be established, a criminal disposition or desire in the minds of both, and an opportunity to commit the crime'."

We need not refer to other authorities as the cases cited above set out the law which controls this case. The evidence in this case fails to show that Miss Moltz exhibited an adulterous disposition, and she denies the charge brought against her. Her association with appellee is fully explained, for it is not shown that the appellee ever was with her except upon occasions when he brought her home from her employment, where he was a coworker, and each time he was seen leaving his employment he was with Miss Moltz and Mrs. Moore. Mrs. Moore denies seeing any familiarity between Miss Moltz and the appellee. The mere fact that appellee, for two weeks after he had left this employment, took Miss Moltz and Mrs. Moore to work, is immaterial because it has an innocent implication. These facts, together with the flat contradiction of the evidence of the private investigator as to the incidents of October 13th and 14th, which was corroborated by the brother of the appellant, an interested witness, brings us to the conclusion that the evidence in this case is not sufficient to establish the charge of adultery. And we cannot accept the charge that adultery was committed on the night and

early morning of November 1st and 2nd, as testified to by the private investigator and confirmed by the evidence of Zimmer, the brother of the appellant, in view of our conclusion that the act alleged to have been committed on October 13th and 14th, by the great preponderance of evidence in the case has been proved to be untrue. Under such circumstances there is a "reasonable possibility of innocence" of the charge that appellee committed adultery on that occasion.

For the reasons given above we are of opinion that the decree of the court below, dated the 10th day of May, 1945, revoking and annulling the decree previously entered, and dismissing bill of complaint, was correct.

> *Appeal from decree dated 10th of April, 1945, dismissed; decree dated the 10th of May, 1945, affirmed, with costs to appellant.*