(Decided 25th March, 1879.)

---

JAMES O. PATTERSON, JOHN H. PATTERSON and FREDERICK E. PATTERSON *vs.* J. ALEXANDER PRESTON Trustee, WILLIAM A. FISHER, FERDINAND C. LATROBE, and others.

*Order of Court ratifying a Sale Erroneously Reported by a Trustee as having been made to certain Parties in Interest Rescinded after the Term, on Petition of such Alleged Purchasers and Proof of Error.*

In 1866, J. A. P., trustee, appointed by a decree of the Circuit Court of Baltimore City to sell, for the purpose of partition, a tract of land lying in Queen Anne's County, Maryland, after duly advertising, offered the property for sale, in said city, and reported to the Court, that he had sold it to the appellants, who were some of the parties entitled. This sale was finally ratified, as was also the auditor's account distributing the net proceeds of sale to all the

parties in interest. The purchase money was never paid. After this, J. O. P., one of the appellants, by orders filed in the cause, assigned his interest in the case to the appellees W. A. F. and F. C. L., in consideration of loans to him severally made by them. In 1876, the appellants filed their petition in the cause, alleging that the trustee had erroneously reported them as purchasers, that they never had purchased, and never intended to purchase the property, and that they had but recently learned of such report having been made; they prayed that the order ratifying the sale might be rescinded and the reported sale rejected. HELD:

1st. That as it appeared from the evidence in the cause that the trustee had reported the appellants as purchasers of the property under a mistake, or under an erroneous impression, and as the delay in filing the petition was satisfactorily explained, there was no reason why the relief asked should not be granted.

2nd. That the sale having been reported as made to the three appellants, it should be rejected as an entirety, and that the appellees W. A. F. and F. C. L., by virtue of the assignments to them of J. O. P's interest, acquired no equities against the relief prayed by the appellants.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, MILLER, ALVEY and ROBINSON, J.

*William H. Cowan,* for the appellant James O. Patterson.

The appellant contends, that the Court below had control of the case in which this erroneous report of sale had been made, notwithstanding the ratification. The power to control and regulate the subject-matter still remained in the Court. *Preston vs. Freyer,* 38 *Md.,* 221; *Glenn vs. Clapp,* 11 *G. & J.,* 1.

In the case at bar the purchase money has never been in Court. The trustee must resort to some of the remedies against delinquent vendees, in order to enforce payment.

That the alleged vendees never purchased the property, is a complete answer to any such demand by the trustee. The said alleged sale should not be held to be void as to some of the supposed vendees, and effectual as to others. It was not a voidable act, but absolutely void. No such transaction ever occurred, therefore, no change of property ever took place. No rights are lost or acquired by a void act. There was no sale of a part to one, and part to another of the three brothers. Either the entire farm was sold to the three, or none of it was sold to any one of them. That the farm was not sold to them is an incontrovertible fact.

Whether James O. Patterson borrowed money on the credit of being the owner of an interest in the said property is not involved in this case. Nor is it material whether he could be compelled to specifically perform a contract entered into by him, respecting a pledge of his portion of the said farm. He could not give what never was his. He took no interest by the reported sale, and, of course, he could not either legally or equitably grant what he was never entitled to.

*R. W. Baldwin,* for the appellants John H. and Frederick E. Patterson.

The appellants contend, that the trustee is but the hand of the Court, and the Court will see to it that no wrong is done through its agent. *Anderson vs. Foulke,* 2 *H. & G.,* 346; *Brown vs. Gilmor,* 8 *Md.,* 322.

The proof shows that the appellants, Frederick E. and James O. Patterson were at the Merchants' Exchange when the alleged sale took place. Frederick, with the knowledge, consent and advice of the trustee, requested Mr. Harris, a friend, to be present for the purpose of bidding in the property to prevent it from being sacrificed. Preston knew of the character of the bid, and why Harris was present. Under the circumstances, Frederick could

not be held as a purchaser. It would be a fraud upon him. However that may be, it is conceded that the appellant, John H. Patterson, was not at the sale, and knew nothing of what occurred there. Nor did he give any one authority to purchase for him. If, as we contend, it would be unjust to hold Frederick and James O. Patterson as purchasers under such circumstances, how much more inequitable will it be to hold John H. Patterson, who is innocent of even the appearance of being a purchaser. The trustee reports the appellants as joint purchasers. The sale cannot be good in part and void in part. If, therefore, it is sustained, it must be sustained as a whole. In such event, the trustee would not be required to collect from each of the appellants one-third of the purchase money, but either one could be compelled to pay the total amount. *Daniel's Chan.*, 1276; *Darkin vs. Marye*, 1 *Aust.*, 22; *Bulmer vs. Allison*, 15 *L. J. N. S.*, 11.

The appellees Fisher and Latrobe loaned their money, and took an assignment of the interest of James O. Patterson, one of the parties. Whatever that interest was, the equitable lien against it may be asserted independent of the other parties to the cause. The rights of the appellants ought not to be assailed in order to maintain any supposed interest which the appellees received by the assignments. The purchase money according to the terms of sale had been due and unpaid for a long time, when they made their loans. This was sufficient notice to have put them upon inquiry, and they cannot occupy the relation of assignees without notice.

*John Scott*, for the appellees, William A. Fisher and Ferdinand C. Latrobe.

The appellees contend, that whatever questions are involved in the Court's order, the appellant James O. Patterson has no standing to raise them. He certainly has not been harmed by the action of the Court, for on

the theory that the sale should be set aside he has no interest whatever in this case. He assigned his interest, first, to Mr. Fisher for $500; secondly, to Mr. Latrobe for $375; and thirdly, to Mr. Pannell for over $1100, with interest on each sum from 1871. This portion of the property, supposing the land worth the $5000, is not more than $1200. If he seeks to have the sale set aside because he had to pay too great a price, this interest is still less. No balance can, under any circumstances, come to him unless the sale stands. It is proved, moreover, that in addition to the above assignments, he conveyed all his property to Mr. Herman Stump, for the benefit of his creditors.

It is certain that, with James O. Patterson, the other two appellants were parties to the cause, and had been represented by Mr. Preston. When the latter was appointed trustee, they ceased to have counsel on record. Of his appointment they had abundant information. They were then called on to take care of their own interests. When the appellees came to look into the case, the sale had not only been ratified, but the auditor's account, made on that theory, had been returned and confirmed. The theory of a colorable sale was refuted by the account. The appellees, therefore, had every reason to believe in the correctness of the record, unless it be a principle of law that a man must ask the parties to a cause if the transactions which the record sets out have really occurred. The very object of the record is to inform the public, and to preserve the information. The doctrine of *lis pendens* makes every one acquainted with the contents of the papers, even though they have not been actually read; and it would be strange, indeed, to compel citizens to resort to the record to discover the truth of the facts, and then to say they were not safe in acting on the information.

MILLER, J., delivered the opinion of the Court.

We entertain no doubt as to the power of a Court of equity, upon a proper case being made by the alleged

purchasers, to rescind an order ratifying a sale reported by its trustee. Whether the appellants are entitled to that relief in the present case, depends first upon the question whether they ever became purchasers, in fact or not, and that question must be determined by the evidence in the record.

The record as supplemented by agreement of counsel, shows, that upon a bill filed in the Circuit Court of Baltimore City in 1866, for the sale, for purpose of partition, of certain land in Queen Anne's County, a decree for a sale was passed, and J. A. Preston, Esq., was appointed trustee to make the same. The parties who were entitled to the land by descent, and to the proceeds of sale, were three brothers, John H. Patterson, Frederick E. Patterson and James Orville Patterson, and the children of a deceased brother, Alfred Patterson, all of whom were parties to the proceedings which resulted in the decree. The trustee advertised the property on two or more occasions without effect, and finally offered it at the Exchange on the 10th of November, 1868, and on the 13th of that month he reported to the Court, that he had sold the property at public action at the Exchange "to Frederick E. Patterson, James Orville Patterson and John H. Patterson, for the sum of $5000, the said parties being the highest bidders therefor." The sale thus reported was duly ratified by an order of Court, and an account was stated by the auditor distributing the net proceeds to the parties interested, which was also finally ratified on the 26th of December, 1868, and the trustee was directed to apply the proceeds of sale accordingly. The alleged purchasers, however, never paid any part of the purchase money, and no effort was made by the trustee to collect it from them. As soon as they learned they had been reported as purchasers, they at once disavowed the purchase, insisted they never became and never intended to become the purchasers of the property, and on the 7th of August, 1876,

filed their petition praying that the order of ratification be rescinded and the reported sale rejected. The testimony taken under this petition and the answers thereto is quite voluminous, and we have examined it with care. It has convinced us that the appellants never did purchase this property, and that the trustee reported them as purchasers under a mistaken or erroneous impression upon the subject. In his own testimony he is not positive, but says he understood the property was purchased by them, and when the bid of $5000, at which it was struck off was made, he is not certain whether it was made by Mr. Harris or Mr. Frederick Patterson, but when it was made he understood the property was purchased by these three parties, and he believed he had authority to report them as purchasers, and would not have done so unless he had so believed. But the decided weight of evidence, and the circumstances of the case, show that this bid was made by Mr. Harris at the instance and instruction of Mr. Frederick Patterson, and with the consent of the trustee, to prevent the property from being sold at a less sum, (the expectation being that more would be bid) and not for the purpose of binding these parties or any one thereto, and that if more was not offered the property should be withdrawn. That seems to have been the understanding of the transaction on the part of Frederick E. Patterson, James Orville Patterson, as well as of Mr. Harris himself who made the bid. John H. Patterson one of the parties reported as purchaser was not present at the time, and knew nothing of what took place at the sale. The delay in filing the petition is also clearly and satisfactorily explained, and there is no possible reason why the relief asked should not be granted, unless the appellees, Messrs. Latrobe and Fisher, have acquired some equitable rights which ought to prevent it.

It appears that these gentlemen loaned money to James Orville Patterson, and took orders upon the Clerk signed

by him, of which the following is a sample. "Mr. Brewer: enter my interest in this case to the use of F. C. Latrobe, to the extent of $375." These loans were effected through the agency of the trustee, and the orders were filed in the case. It further appears that these advances were made, and the orders given after the sale had been reported and ratified, and also after the auditor's account, distributing the proceeds had been stated and ratified. Now if these orders operate as assignments *pro tanto* of Orville Patterson's distributive share of the proceeds of sale, (and we by no means intimate an opinion that such is not their true construction and effect,) the assignees have no interest in holding him to this purchase, for it is clear that what he would receive as distributee, is less than what he would have to pay as one of the three purchasers. Upon that construction of the orders, therefore, it is plain these appellees would be benefited instead of being injured, by setting the sale aside, and having the property sold to some other party. But suppose the effect of the orders is to assign the equitable interest in the land which he acquired as purchaser, what was that interest? Simply a right to an undivided third of the land, upon payment of one-third of the purchase money. But he has never paid anything, and the record shows he had assigned all his property for the benefit of his creditors after this sale had been reported and ratified. In that state of case we can hardly suppose the appellees would contend that it was the duty of the Court to direct the trustee to collect the whole purchase money from the other *two* purchasers, and then make a conveyance to the *three*, so that their assignments would fasten upon the interest of Orville thus acquired. Such a proceeding would be most inequitable, for it is nothing less in effect than compelling Frederick and John to pay the debts of Orville. Nor can the Court hold on to Orville as purchaser and release the others, even if that would be of any possible benefit to the appel-

lees.   The sale is to the three, and it must be ratified or rejected as an entirety.   Whatever view therefore may be taken of the case, we are of opinion the appellees have by virtue of these assignments acquired no equities against the relief prayed by the appellants.

The order dismissing the appellants' petition will therefore be reversed, and the cause remanded, to the end that the sale be vacated and the property resold under the decree.

*Order reversed, and
cause remanded.*

(Decided 25th March, 1879.)