# BERTHA V. SALTZGAVER *v.* WILLIAM H. SALTZGAVER

[No. 10, January Term, 1944.]

*Decided February 2, 1944.*

The causes were argued before SLOAN, C. J., COLLINS, MARBURY, MELVIN, and BAILEY, JJ.

*John Wood* and *Theodore F. Brown* for the appellant.

*Ralph G. Hoffman* for the appellee.

MELVIN, J., delivered the opinion of the Court.

The two appeals in this record are from orders of the Circuit Court for Carroll County, in equity, dated, respectively, July 12, 1943, and October 30, 1943, in a suit for divorce by the wife (appellant) on the grounds of abandonment and adultery. The first of these orders sustained a demurrer to her petition to rescind the decree of May 30, 1942, dismissing her bill of complaint and the second denied her application for suit money and counsel fee to prosecute this appeal.

The record discloses a situation, both as to the facts and the law, which calls for a fresh interpretation of the doctrine of judicial discretion, as applied to this particular kind of a proceeding, and also of the doctrine of recrimination in divorce cases in Maryland.

The parties to this suit, after having lived together as husband and wife for twenty-four years, and having had four children born to them, separated in Frederick County, Maryland, on July 26, 1939, and five days later the wife (appellant) filed a suit in that county for a divorce *a mensa et thoro* on the ground of cruelty, or constructive abandonment. The chancellor there, after a full hearing of the case, dismissed her bill of complaint under date of October 20, 1940, for lack of corroboration.

When the appellant left the appellee on the date mentioned, she moved at once to Westminster, Carroll County, where she obtained employment and where, with her three minor children, she has resided ever since. Shortly after the separation the husband also moved to Carroll County in the course of his employment by the Western Maryland Railroad, and became a resident of Union Bridge. At that place, in or about July, 1940 (and three months prior to the chancellor's decision of his wife's then pending suit for divorce in Frederick County), he began to live in open adultery with an alleged housekeeper, by whom he had a child, born on April 17, 1941.

On January 9, 1942, the wife filed a bill for divorce *a vinculo matrimonii* alleging abandonment and also adultery. The husband in his answer denied the abandonment and neither admitted nor denied the allegation of adultery. At the taking of testimony on the bill and answer, however, the adultery was both proved and admitted, and it was shown that at the time it began the husband and wife had not been separated longer than twelve months. Notwithstanding these facts, the chancellor dismissed the wife's bill of complaint.

His decree was on the sole ground that she had, without justification, left her husband in July, 1939, and since that time had made no effort toward reconciliation, thus, he held, barring her own suit for divorce, in accordance with the doctrine of recrimination. This doctrine the chancellor invoked in his opinion by relying upon authorities which deal with it generally and apply in some other jurisdictions, but which are directly at

variance with the law on the subject as plainly laid down and established by judicial decision in Maryland.

This court has expressly and definitely decided heretofore that while the doctrine of recrimination in divorce cases is recognized in Maryland, it is with the limitation that, in a suit on the ground of adultery, the recrimination charged by the defendant against the plaintiff must be for a cause *a vinculo matrimonii* and not for one *a mensa et thoro*, merely. *Pryor v. Pryor*, 146 Md. 683, 131 A. 47; *Appeltofft v. Appeltofft*, 147 Md. 603, 128 A. 273; *Williams v. Williams*, 156 Md. 10, 13, 142 A. 510; *Jeppi v. Jeppi*, 179 Md. 698, 18 A. 2d 207.

Other Maryland cases in support of this application of the doctrine are: *Fisher v. Fisher*, 93 Md. 298, 300 48 A. 833; *Rasch v. Rasch*, 105 Md. 503, 507, 66 A. 499; *Green v. Green*, 125 Md. 141, 143, 93 A. 400; *Foxwell v. Foxwell*, 118 Md. 471, 84 A. 552.

The particular language used by this court as the basis of its ruling is that adopted in the Appeltofft case, *supra* [147 Md. 603, 128 A. 274], in its quotation from the Pryor case, *supra*, as follows: "By the great preponderance of authorities in this country, where the statutes authorize an absolute divorce or divorce *a mensa et thoro*, it is fully recognized that in a suit by one spouse for a cause entitling him or her to an absolute divorce, the other spouse cannot plead as a bar in recrimination a cause entitling him or her to a limited divorce."

In the absence of any statute on the subject, that language expresses clearly and indisputably the law of Maryland today on the doctrine of recrimination and is just as authoritative and binding on the courts within this jurisdiction as would be a plainly worded and valid statute.

In the review of the Appeltofft case, *supra*, in 26 *Col. L. Rev.* 83, the reasons for the doctrine of recrimination are discussed and recognition given to the various interpretations of it in this country. A majority of the States by statute make recrimination a defense in one form or another. In a very few the same result is in-

directly accomplished by statutes which provide that a divorce may be granted only to the innocent or injured party, and in the remaining States recrimination is held to be a defense under the common law. As pointed out in the *Review,* "it is almost universally held in this country that any conduct constituing a statutory ground for an absolute divorce will bar an action for either an absolute or partial divorce." The case of *Green v. Green,* 125 Md. 141, 93 A. 400, upon which the chancellor in the instant case seemed to rely principally, is cited as one of the authorities in support of this general statement. However, the case under review (Appeltofft) is the one given as expressive of the law in Maryland on the precise point involved in the case at bar, in these words: "Misconduct constituting ground only for a limited divorce is not a defense to an action for an absolute divorce." See also *Madden on Persons and Domestic Relations,* 1931 Ed., 309; 27 *C. J. S., Divorce,* Sec. 68, and note 89, in which the authority of the Pryor and Appeltofft cases is likewise recognized as stating the law for Maryland.

It is anomalous that the Green case, *supra,* is cited in these other two cases as recognizing the limitations upon the doctrine as therein enunciated by the court. The chancellor undertakes to apply that case to the one at bar by using the quotations from *Brown on Divorce,* page 84, stating the·rule to be as follows: "Where each of the parties has committed a matrimonial offense which is a cause of divorce, so that when one seeks for this remedy the other is equally entitled to the same, whether the offenses are the same or not, the court can grant the prayer of neither." In that connection he also relies upon the language in the syllabus of the Green case, as follows: "Divorce is a remedy provided for an innocent party, and any misconduct on the part of the complainant which constitutes a ground for divorce will bar his suit, without reference to the nature of the offense of· which he complains." However, this very quotation, as shown by the body of the opinion, is taken from 14

*Cyc.* 650, and has this very significant addition: "In some states, by statute or otherwise, a contrary ruling prevails and the offense must be of the same character."

Maryland happens to be one of those States in which a contrary rule does prevail, the doctrine being limited in so many words to the kind of offenses mentioned in the Pryor-Appeltofft-Williams-Jeppi cases, *supra*. Those, and not the Green case, are the ones which furnish the law governing this pending suit. The decision in that case was based on an entirely different situation from the one now before us. Here the defendant (husband) is the one who committed adultery, while the wife at that time was, at most, guilty of abandonment for less than the statutory period entitling him to an absolute divorce.

There the husband was suing for divorce on the ground of his wife's abandonment for over five years. It was brought out by the court examiner in taking the testimony that the husband had been guilty of adultery since his wife had been away from him, and this was held to constitute a bar in recrimination to his obtaining a divorce. Adultery was a bar in the Ecclesiastical Courts of England, and has been universally so held ever since, regardless of whether the action was for either an absolute or a partial divorce. That is what the Green case decided and nothing more. To the same effect is the statement in *Nelson on Divorce and Separation*, 1895 Ed., Sec. 429, Vol. 2; *Bishop on Marriage, Divorce and Separation*, 1891 Ed., Sec. 350; *Brown on Divorce*, page 84; *Stewart on Marriage and Divorce*, 1884 Ed., Sec. 314. The distinction between these statements of the general rule, non-applicable here, and the statement of the limitations upon the rule, which must control the decisions in Maryland in this kind of a case, is too plain to require further comment.

This being the settled law in Maryland, it would not be within the sphere of discretion of a court in this jurisdiction to fail to apply it to any state of facts which shows a case for divorce *a vinculo* for the plaintiff and one against her, in recrimination, for divorce *a*

*mensa,* only. That is precisely the case here. A petition to strike out a decree dismissing a plaintiff's suit under such circumstances would come directly within the decisions of this court in another line of cases in which the matter of procedure is involved.

The facts on this phase of the instant case are that the chancellor entered on June 2, 1942, a decree dismissing plaintiff's bill of complaint, and on the following June 20th denied her petition for a rehearing. Under date of May 10, 1943, the plaintiff filed her petition to strike out the decree of June 2, 1942, in which—after pointing out that her charge of adultery had been both proved and admitted as of a time (July, 1940) when the defendant was not entitled to even sue for an absolute divorce on any ground recognizable by the law of this State—the main allegations are: "(3) That at the time said decree was passed in this case and for several months thereafter, the plaintiff was physically incapacitated and under the care of a doctor, was in a confused and bewildered, extremely nervous and highly disturbed state of mind, and she had no means at that time to carry this case to the Court of Appeals, the costs and expense of which she would be obliged to pay as it seemed to her then, and although she was advised to do so by her counsel she was in no satisfactory physical or mental condition to make an intelligent decision on that rather technical and complicated subject; in consequence thereof she inadvertently allowed the time for ordering an appeal to expire without taking that action and she is now most inequitably left without any remedy or relief whatsoever except through this petition to your Honors to strike out the decree passed as aforesaid in the above entitled cause; (4) That the circumstances in this case are such as should satisfy the Court, in the exercise of a sound discretion, that a situation exists here in which equity and good conscience, justice and enlightened public policy require, that the said decree ought to be set aside."

The defendant demurred to this petition, stating as his main ground that the plaintiff had her remedy by appealing, in due course, from the original decree, but that she failed to avail herself of it. In sustaining this demurrer, the chancellor reaffirmed his basic ruling that the plaintiff was barred from relief in her suit because of the doctrine of recrimination. On the immediate point of procedure he held that as the petition came after the decree had become enrolled, it was too late, and also that it was lacking in any of the elements necessary to bring it within the exceptions to the rule, hereinafter stated.

However, it has been repeatedy held by this court that decrees may be set aside, after enrollment, in certain classes of cases and that this may be accomplished by petition filed in the same case. The facts and the law of the instant case clearly bring it within the purview of such ruling. As stated in *Foxwell v. Foxwell*, 122 Md. 263, 273, 89 A. 494, 496:

"The general rule undoubtedly is that after the enrollment of a decree in chancery, in the absence of fraud, surprise, or irregularity in its procurement, a substantial error in it will not be corrected or a hearing of the case granted upon a mere petition, a bill of review or an original bill for fraud being the appropriate form of proceeding in such cases. * * *

"But to this general rule there are certain well-defined exceptions which are equally well established, where the procedure may be by petition. These are in cases not heard on their merits, and in which it is alleged that the decree was entered by mistake or surprise, or under such circumstances as shall satisfy the court, in the exercise of a sound discretion, that the enrollment ought to be discharged and the decree set aside."

*Primrose v. Wright,* 102 Md. 105, 62 A. 238; *Herbert v. Rowles,* 30 Md. 271, 278; *First Nat. Bank v. Eccleston,* 48 Md. 145, 155; *Pfeaff v. Jones,* 50 Md. 263; *Gechter v. Gechter,* 51 Md. 187; *Patterson v. Preston,* 51 Md. 190; *Downes v. Friel,* 57 Md. 531, 533.

To the authorities above cited are to be added those of *Simms v. Simms*, 178 Md. 350, 351, 13 A. 2d 326; *Wyahllyeth v. Wyahllyeth*, 178 Md. 417, 13 A. 2d 551; *Bailey v. Bailey*, 181 Md. 385, 30 A. 2d 249; and also the very recent case of *Green et al. v. Green et al.*, 182 Md. 571, 35 A. 2d 238, 240, decided by this court on January 13, 1944. In the case last cited this court, reversing the chancellor who had sustained a demurrer to the petition to rescind, ruled that this petition should have been granted even though the petition was filed more than thirty days after passage of the order. The ground of this court's ruling there was the first exception to the general rule above quoted, namely: "The case was not heard on its merits."

See also *First National Bank v. Eccleston*, 48 Md. 145.

Authority for invoking exception number two, "where the decree was entered by mistake or surprise," is to be found and applied in numerous cases in which the principle is succinctly expressed. One of these is *Gechter v. Gechter*, 51 Md. 187, where it was said that the power of the court to vacate under a petition a decree not only alleged to be procured by fraud, but which was also a surprise to the party, cannot be here considered an open case since the decision of *Herbert v. Rowles*, 30 Md. 271; *Whitlock Cordage Co. v. Hine*, 125 Md. 96, 93 A. 431; *Simms v. Simms, supra*.

While the case at bar does not come within either exception number one or number two to the general rule, it does, in our opinion, clearly come within the scope of exception number three. This both authorizes and requires the granting of a petition to set aside a decree which had been entered under such circumstances as should satisfy the court, "in the exercise of a sound discretion, that the enrollment ought to be discharged and the decree set aside."

The facts here, as alleged in the petition and admitted by the demurrer, are that at the time the decree in question was passed, and for several months thereafter,

the plaintiff was physically incapacitated and under the care of a doctor, and that although she was advised by her counsel to take her appeal, she was not in satisfactory physical or mental condition to make a decision as to her course in this litigation. It also alleges the fact, established by the record, that the decree she seeks to have set aside barred her from an absolute divorce on the ground of her husband's admitted adultery, committed at a time when he was not entitled to even sue for a divorce on any ground recognized by the law of this State.

That the petitioner was nonplused at the denial of her suit for divorce was readily understandable, and it is but reasonable to assume that she was acting in good faith in presenting her petition in a last desperate effort for the relief to which she was entitled. The circumstances before the chancellor were such, we hold, as to require the granting of her petition, in view of the plainly expressed rule of law governing the case, which placed the decision beyond the realm of the chancellor's discretion.

The "exercise of a sound discretion" called for the recognition of the authority of this law and of the right to equitable relief which had become vested in the petitioner in accordance therewith. At this stage of the proceedings, the question involved was whether the subject matter of the order appealed from was within the "area of the discretion of the court which passed it," and thus open to examination upon an appeal in the same case. It is settled in this State that such an order is appealable. *Gottschalk v. Mercantile Trust & Deposit Co.*, 102 Md. 521, 523, 62 A. 810; *Emory v. Faith*, 113 Md. 253, 256, 77 A. 386.

In the former case [102 Md. 521, 62 A. 811], the court said: "It is not necessary at this late date to cite authorities in support of the well-settled doctrine that an appeal will not lie from an order or decree passed in the exercise of a discretion of the lower court. But the question whether the subject-matter of the order or decree was within the area of the discretion of the court

which passed it is open to examination, and upon an appeal in the same case, for a court cannot improvidently extend the exercise of its discretion to matters which lie beyond its legitimate reach."

Again, in the Emory case, *supra* [113 Md. 253, 77 A. 387, the appealability of such an order as the one now under consideration is further recognized by adopting the language of the court in *Re Farmers' Loan & Trust Co.*, 129 U. S. 206, 32 L. Ed. 656, as follows: " 'The other reason given why an appeal should not be granted is that the action of the circuit court in the case is one within its discretion. All we have to say upon this subject is that, if it be an authority vested in the judges of the circuit court, it must be exercised and governed by. the principles of a judicial discretion, and the very point to be decided upon appeal here is whether they had such discretion, and whether they exercised it in a manner that cannot be reviewed in this Court. The question is one which in its nature must be the subject of appeal. * * * And still more, whether in the exercise of what the Court asserts to be its discretionary power it has invaded the established rights of the petitioners in this case contrary to law in such a manner that they can have no relief except by an appeal to this court. This is a matter eminently proper to be inquired into upon an appeal from such an order'."

The ground of appellee's motion to dismiss the appeal in the pending case is that, in reality, it is not an appeal from the order of July 12, 1943, sustaining appellee's demurrer to the petition to strike out the decree of June 2, 1942, but is rather an attempted appeal from that decree. Therefore, it is argued, it is too late to be considered by this court. However, in the view we take of this case, the order of July 12, 1943, is properly before us, for the reasons stated. It presents directly the question of whether the chancellor had any latitude for the exercise of a judicial discretion, or whether he was bound to follow a prescribed rule of law which precluded the exercise of it, under the particular facts here.

In this connection it is of first importance to correctly interpret the term "judicial discretion," for it is often loosely used. The treatment of this subject in *Bowers' Judicial Discretion of Trial Courts*, par. 10 et seq., is illuminating. The author there says: "In all cases courts must exercise a discretion in the sense of being discrete, circumspect, prudent, and the exercise of cautious judgment, but that is a duty generally laid upon all officers as well as private individuals. Judicial discretion, in its technical sense, means something more. It is that power of decision exercised to the necessary end of awarding justice and based upon reason and law, but for which decision there is no special governing statute or rule. It is obvious that if a special statute prescribed a decision, there is, in all instances coming within its purview, a restraint upon the judge which precludes the exercise of a discretion by him; for the very word 'discretion' implies the absence of restraint. This statement is only apparently at variance with the oft-quoted statement of Lord Mansfield that: 'Discretion, when applied by a court of justice, means sound discretion guided by law'."

If there had been a Maryland statute defining the doctrine of recrimination for this State, and prescribing that a ground for divorce *a mensa*, only, is not a good recriminatory defense to a suit for divorce *a vinculo*, it is quite obvious that the chancellor in the case at bar would have been bound to follow it, and accordingly precluded from the exercise of any discretion as to his action on this point. A denial of relief to a petitioner to strike out a decree entered in direct contravention of such a statute would have clearly entitled the aggrieved party to relief on appeal. Although there is no Maryland statute on the subject, it is free from doubt that this identical rule applies with equal force where the law on recrimination has been just as clearly laid down by judicial decision of this court. As stated by Lord Mansfield, discretion means "sound discretion guided by law." There is law to guide the decision in

this case and it points directly to the setting aside of the original decree which did not conform to it. As stated in Bowers, *supra,* par. 10 : "If there be an authoritative command for performance in a particular way obedience must follow; if not, discretion must be exercised." *Commonwealth v. Tucker,* 189 Mass. 457, 76 N. E. 127, 7 L. R. A., N. S., 1056.

That was precisely the issue of law raised by the appellant's petition in this case, and it is one that is proper to be inquired into upon an appeal from such an order. In re Farmers' Loan & Trust Co., supra.

The reason for permitting the annulment of decrees which are entered by mistake or surprise, or under such circumstances as to satisfy the Court in the exercise of a sound discretion that the enrollment ought to be set aside, exists even more strongly in divorce proceedings than in other cases to which the rule is applied. *Foxwell v. Foxwell,* 122 Md. 263, 273, 89 A. 494.

Still another reason for the Court to be astute in enforcing the policies and principles of this branch of the law is that the public has a pecular interest in the marriage of its citizens, since upon the proper preservation of the marriage ties depends the decency and purity of society. *Fisher v. Fisher,* 95 Md. 314, 318, 52 A. 898. Just as the courts will be astute in preserving marriage ties, except for grave and weighty causes, they will be none the less so in dissolving these ties when such a state of facts does arise and public morality and decency strictly require it.

The case at bar is a typical one for the intervention of a divorce court in behalf of the public welfare. The state has a direct interest in discontinuing this marriage when it finds that one of the parties has so far transgressed the rules of law and of civilized society as to set up an adulterous household and start raising a family of bastard children, at the same time having a chaste wife and legitimate children in another household, and who had not been apart from him longer than one year before he began his course of adultery.

Under these circumstances, not only is the wife, as an individual suitor in a Court of Equity, entitled to a divorce under the law of Maryland, but the State, itself, has the right to look to the Court to protect its social policy in such a situation on the broad ground that it would not tolerate the continued existence of this kind of a marital relationship.

The Court concludes, therefore, (first) that the original decree in this case denying the wife a divorce on the ground of adultery was contrary to the established law of this State, as laid down by judicial decision; (second) that the wife's petition to set aside said decree, even though after enrollment, was a proper method of procedure under the circumstances, in conformity with the third exception to the general rule on the subject, and should have been granted; (third) that the question raised by such petition and order, involving the area or sphere of the Court's discretion, is reviewable on appeal in this same case.

Being of the opinion, therefore, that the pending appeal is properly before us, the motion to dismiss it is overruled, and, for the reasons stated, the order of July 12, 1943, must be reversed.

Inasmuch as the appellant is entitled to a divorce *a vinculo matrimonii* under the facts in this record, she is likewise entitled to alimony for her support, both *pendente lite* and permanent, together with suit money and a reasonable counsel fee for services on this appeal. *Daiger v. Daiger*, 154 Md. 501, 140 A. 717; *Timanus v. Timanus*, 178 Md. 640, 644, 16 A.2d 918; Code, 1939, Art. 16, Sec. 15. The amount of the alimony and of the counsel fee will be left to the determination of the Chancellor upon the remanding of these proceedings.

In thus ruling on the first of the two orders from which the appeal in this case is taken, it necessarily follows that the second order (the one of October 30, 1943) must likewise be reversed. This was an order which denied the application of the wife for an allowance with which to defray the necessary costs, expenses and fees in connec-

tion with the prosecution of the appeal from the order of July 12, 1943. Her petition alleges that she is without any funds, property or other means with which to defray said costs and expenses, and this is not denied by the husband's answer. He states his own income to be approximately $200 per month, subject, however, to certain specified deductions which have left him in "an embarrassed financial position." The answer concludes with this paragraph: "Further answering said petition your respondent respectfully says that, even if this Honorable Court determines that he is liable for the payment of costs, fees and expenses in his petition, that the sum of $350.00, the amount named in the Court's order *nisi* of August 16, 1943, is more than he can pay; is more than a reasonable amount required for the costs, expenses and fees necessary in this case, and is more than should be allowed against a husband in the embarrassed financial position of your respondent."

The record shows that under date of October 15, 1943, an agreement was filed in the case stipulating that the tentative cost of making up the record would be $26.50, and that the cost of printing the record and briefs would be $1.75 per printed page. That, under the circumstances, the petition should have been granted is free from any doubt. The rule has been stated so many times in the decisions of this Court that it is no longer an open question in Maryland. It is summarized in these words in the case of *Daiger v. Daiger, supra* (154 Md. 501, 140 A. 720): "In this state it is no longer open to question, first, that a wife in a divorce proceeding is a privileged suitor where she is living apart from her husband and has no independent means of her own, and as such she is entitled to alimony, suit money, and reasonable counsel fees; second, that she is entitled to continuance of such alimony during the pendency of the appeal to this Court and until its final disposition, as also the costs incident to the record on appeal, and reasonable counsel fees in the prosecution thereof." *McClees v. McClees,*

160 Md. 115, 130, 152 A. 901; *Sterling v. Sterling,* 145 Md. 631, 635, 125 A. 809; *Hood v. Hood,* 138 Md. 355, 113 A. 895; *Chappell v. Chappell,* 86 Md. 532, 39 A. 984; *Timanus v. Timanus,* supra; *Winchester v. Winchester,* 138 Md. 95, 113 A. 584; *Tome v. Tome,* 180 Md. 31, 22 A. 2d 549; *Tabeling v. Tabeling,* 157 Md. 429, 146 A. 389; *Dunn v. Dunn,* 181 Md. 665, 29 A.2d 664.

> *Order of July 12, 1943, reversed and cause remanded for further proceedings in conformity with this opinion. Order of October 30, 1943, reversed, the appellee to pay the costs both in this Court and in the lower court.*