## BERMAN *v.* BERMAN

[No. 43, October Term, 1948.]

*Decided December 10, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Louis S. Ashman* for Alvin H. Berman, appellant and cross-appellee.

*Leonard Weinberg* and *George L. Clarke*, with whom were *Weinberg & Green* on the brief, for Edith Berman, appellee and cross-appellant.

HENDERSON, J., delivered the opinion of the Court.

Edith Berman, of Norfolk, Virginia, was married to Dr. Alvin H. Berman, a Baltimore dentist, in 1923. On June 5, 1929, she was awarded a divorce *a mensa* on the ground of desertion, and custody of their infant daughter, with "alimony" of $15.00 a week "the court retaining jurisdiction to modify this allowance upon the application of either party." Mrs. Berman returned to Norfolk, where she resided with her father. After an unsuccessful attempt by the husband to have the alimony reduced in 1930, it was reduced to $10.00 per week in 1933. In 1941, she obtained employment at the Norfolk Navy Yard. In March, 1947, she filed a petition for increase in alimony, alleging her inability to continue work because of ill health. After hearing, the chancellor (Judge Dickerson) on September 16, 1947, increased the alimony from $10.00 to $30.00 per week, subject to further order of court, and ordered that an arrearage in alimony payments of $444.00 be discharged. On January 17, 1948, Dr. Berman filed a petition to rescind the award of September 16, 1947, on the ground that it was obtained by perjured testimony and imposition upon the court. After hearing, the chancellor (Judge Mason) on April 2, 1948, "modified (retroactively)" the previous decree, and awarded alimony of $13.00 per week "from and after December 1, 1947", subject to further order of court. Both parties appeal here from the modified decree.

There is a preliminary question concerning the record. Counsel for Mrs. Berman designated that a transcript of the testimony taken before Judge Dickerson, and the deposition of Dr. Martin offered at that hearing, be included in the record on these appeals. Counsel for Dr. Berman objected and the Chancellor passed an order on June 15, 1948, that these items should not be included

in the record. Thereafter, on petition, we issued a writ of diminution, on June 28, 1948, directing the clerk of the Circuit Court No. 2 to transmit these items.

Upon what theory Judge Mason passed the order of June 15, 1948, is not clear, but presumably it was based on the fact that these items had not been formally offered in evidence before him. In his oral opinion, he said: "The court is impressed with the fact, from a reading of such part of the record as is in evidence, that is the record of the hearing last September, that the probabilities are that Judge Dickerson thought this lady, Mrs. Berman, was unable to work". But it is not necessary that exhibits or testimony, offered or taken at previous hearings in the same case, be formally offered in evidence at subsequent hearings. Ordinarily, of course, previous orders or decrees, not appealed from, would be final and binding on the parties, so that it would be idle to inquire into the evidence upon which they were based. Compare *Balland v. Balland,* 185 Md. 132, 43 A. 2d 207, and cases cited. But here there is an attack upon the previous decree, on grounds suggesting imposition or fraud upon the court, and all of the testimony at the previous hearing is germane.

From a careful reading of the evidence before Judge Dickerson, we think the charges of perjury and imposition were not well founded. According to Dr. Martin, Mrs. Berman had "Rheumatic Heart Trouble, with evidence of trouble with the aortic valve". This was a chronic condition, but he pointed out that with advancing age it rendered her more liable to fatigue. Although she was able to do some kind of clerical work, her employment at the Navy Yard was "too strenuous for her condition". On the question whether she had given up her position, at the time of the hearing, her testimony was, as follows:

"Q. You are asking now for an increase of alimony is that right? A. I am.

Q. What is your reason for that? A. I am no longer able to work. I am ill and I have had to give up my job.

(The Court)   You have given it up?

(The Witness)   I have given it up.

(The Court)   Are you earning anything at all?

(The Witness)   Nothing at all.

(The Court)   Have you any means of your own, investments or income?

(The Witness)   No, I have not.

(The Court)   How are you paying your expenses?

(The Witness)   Well, I have borrowed money from the family since I gave up my position.

(Mr. Freeny)   Mrs. Berman, I really can't hear a word you are saying.

(The Court)   She says she has given up her position and has met her expenses by borrowing from the family. When did you give up your position?

(The Witness)   I asked to be given a leave of absence on the 30th of June.   The papers went through the Civil Service Commission in the Yard and they were acted on— that was on June 3rd.   They were acted on July 18th, but I didn't work.   I worked a very few days during that time, I was absent.   I was kept on the rolls so that a replacement could be made.

(The Court)   You were on leave of absence for how long?

(The Witness)   Well, until a quarter of the year. Since the appropriations, Government appropriations are made by the quarter, I had to ask for another quarter.

(The Court)   Three months.

(The Witness)   A third of the year, four months, until I would be permitted to stay off or retire or resign my position, if I am not able to go back.

(The Court)   What are you receiving now from the Government?

(The Witness)   Not anything.   I have no sick leave. I used up all my sick leave.

(The Court)   What would be your pension?

(The Witness)   If I am entitled to that, it will be five dollars a week; if I am allowed to retire."

The appellant contends that the court was deceived by her statement that she had "given up" her job, when she was merely on leave of absence, and that when she returned to work on November 17, 1947, this was such a breach of good faith as to warrant the chancellor in disallowing any alimony whatever, under the doctrine of "clean hands". The cross-appellant on the other hand, invokes the doctrine of "clean hands" against Dr. Berman, upon the theory that his charges of perjury and imposition were so unfounded as to justify the court in withholding the relief sought.

In the view we take of the case, it is unnecessary to decide whether the doctrine is applicable in a divorce proceeding, a question expressly left open in *Meeks v. Meeks,* 189 Md. 80, 54 A. 2d 334. Assuming, without deciding, that it is applicable and broader than the doctrine of recrimination (*Saltzgaver v. Saltzgaver,* 182 Md. 624, 627, 35 A. 2d 810), we think the rule could not be applied under the facts of this case. In his brief opinion, Judge Dickerson said: "I find that Mrs. Berman is not in good physical condition. There is no contradiction of the medical report that she ought to cease work because of her condition. * * * I have taken into consideration the fact that whatever he pays his wife is an income tax deduction, while, on the other hand, it is subject to income tax in the hands of Mrs. Berman." He also remarked at one point that $10.00 a week "would not go very far at the present time under present conditions." Judge Dickerson thus based his decree on the fact that "she ought to cease work", not on the fact that she had actually stopped. Moreover, it was admitted by both sides, in the argument before us, that on April 6, 1948, four days after the decree appealed from, Mrs. Berman was recommended for Medical Disability Retirement from the Navy and her employment was permanently terminated. We think Judge Mason was right in refusing to rescind the previous decree as prayed.

However, we see no basis for a reduction in the amount allowed by Judge Dickerson. The petition, in fact, did

not ask for a reduction, but was filed upon a different theory. It was not disputed that, although the daughter is now of age and married, Mrs. Berman has no means of her own, but contributes to the expenses of her father's household, he being now 88 years of age. Dr. Berman, on the other hand, had a net income, before taxes, of about $9,500 in 1946. Judge Mason found that his net income, after taxes, for 1947 would be about $6,500.00, or about $1,000.00 less than in 1946. At any rate Judge Dickerson considered all the relevant factors, and that decree became final when it was not appealed from. This record shows no such change in circumstances as would justify its modification. We think Dr. Berman's petition should have been dismissed, leaving the previous decree in effect.

The appellant makes numerous charges against Mrs. Berman, under the doctrine of "clean hands". The only one we think proper to notice, is the charge that in 1946, she wrote several letters to Dr. Berman, offering to obtain a final decree *a vinculo*, if he would make a financial settlement on her, or, stated more baldly, that she would give him his "freedom" to "remarry", at a price of $35,000. Without in any way approving such conduct, it is clear that property settlements, in connection with divorce proceedings are not unlawful. Code, Art. 16, section 42; *Kelsey v. Kelsey*, 186 Md. 324, 329, 46 A. 2d 627. The mere fact that she proposed one in somewhat crude terms is not enough to put her out of court. We do not find it necessary in this case to comment upon the cross-appellant's charges of misconduct on the part of counsel for Dr. Berman, in reflecting upon her character and veracity in her place of employment and elsewhere.

It appears from the docket entries that the appellant filed an "approved" appeal bond when the appeal was entered, for the purpose of staying the payment of any alimony pending the appeal. Presumably the amount of the bond was approved by the Chancellor, under Code, Art. 5, section 33. We take this occasion to say that we think such a procedure is unauthorized. In *Chappell v.*

*Chappell*, 86 Md. 532, 39 A. 984, 988, it was held that the filing of an appeal bond under Section 28 (now section 34) of Art. 5 did not suspend the operation of any "previous order" awarding alimony and counsel fees to a wife, on the ground that at the time of its adoption (ch. 185, Acts of 1830) that section had no relation to proceedings for divorce in chancery, and pointed out that it "would absolutely deprive her, during the progress of the litigation, of the requisite money to support herself and to defray the costs and expenses of the controversy". The subject matter of Sections 33 and 34 was covered by ch. 185, Acts of 1830, although subsequently enacted in two sections in the Code of 1888. The reasoning of the *Chappell* case is fully applicable to section 33.

There can be no doubt that a wife "is entitled to the continuance of * * * alimony during the pendency of an appeal to this court and until its final disposition". *Daiger v. Daiger*, 154 Md. 501, 508, 140 A. 717, 720. See also *Rohrback v. Rohrback*, 75 Md. 317, 23 A. 610; *Rittler v. Rittler*, 180 Md. 691, 23 A. 2d 676; *Saltzgaver v. Saltzgaver, supra*.

The chancellor has full jurisdiction to award alimony, costs and counsel fees pending an appeal. *Dougherty v. Dougherty*, 187 Md. 21, 48 A. 2d 451, 458, 55 A. 2d 787, 789; *Sterling v. Sterling*; 145 Md. 631, 125 A. 809; *Coles v. Coles*, 2 Md. Ch. 341, 346. The only qualification of this rule is in cases where the litigation is subsequent to an absolute divorce. *Tome v. Tome*, 180 Md. 31, 22 A. 2d 549. Although we said in the recent case of *Nicodemus v. Nicodemus*, 186 Md. 659, 48 A. 2d 442, 446, in regard to a decree awarding alimony, that "it was within the power of the chancellor to refuse to stay its operation pending appeal" under section 33 of Art. 5, upon further consideration we now hold that that section is wholly inapplicable in a divorce proceeding, jurisdiction over which was lacking in chancery, at the time when section 33 was first adopted.

*Decree reversed and petition dismissed, costs to be paid by Alvin H. Berman.*