## BLUMENTHAL *v.* BLUMENTHAL

[No. 404, September Term, 1969.]

*Decided June 24, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Morton E. Rome* for appellant.

*Stanford G. Gann*, with whom were *Levin, Gann & Hankin* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

Here we have a situation in which the wife had grounds for divorce *a vinculo matrimonii* but elected to sue the husband only for alimony. He does not contend that his wife failed to establish him guilty of the conduct charged. Instead he claims the "clean hands" maxim of equity bars the wife from any relief, that her conduct amounts to constructive desertion and that she has sufficient assets of her own to make alimony not properly allowable. The wife is equally unhappy with the chancellor's decree in this case. She has appealed, contending that alimony of $17,000.00 per year is insufficient since she estimates her annual financial needs at $80,000.00. We shall affirm the action of the chancellor (Maguire, J.).

The net income of the husband prior to taxes is around $100,000.00 per year. The chancellor based his award of alimony on net income after taxes which he found for the years 1965 to 1968, inclusive, to average approximately $55,500.00 per annum. He cited as authority for using this method *Schuman v. Schuman*, 252 Md. 13, 248 A. 2d 876 (1969) ; *Hall v. Hall*, 238 Md. 191, 208 A. 2d 593 (1965), and *Bradshaw v. Bradshaw*, 189 Md. 322, 55 A. 2d 719 (1947). It should be pointed out that in *Schuman* the net

income to which reference was made was not income after taxes. The term as there used had reference to the amount remaining from gross rental income after the deduction of expenses. An examination of the record extract in *Hall* indicates that the reference there to the husband's net income is to before tax income. The award affirmed in *Bradshaw* was "about 30 per cent of the husband's income after payment of the income tax." On the issue of definition of net income as used in a separation agreement see *Lewis v. Lewis*, 256 Md. 45, 259 A. 2d 246 (1969).

There was sharply conflicting testimony as to the relative net worth of the parties. The chancellor stated:

> "It was impossible from the testimony for the Court to arrive at any conclusion with respect to the value of the real estate and the personal property owned by the parties, either jointly or individually."

Accordingly, the court designated appraisers for certain of the property. The wife in her answers to interrogatories had placed the value of her assets at approximately $375,000.00, while the husband in response to interrogatories placed the value of his assets at approximately $261,000.00. The wife testified that she had approximately $4,000.00 at the time of marriage and that a small inheritance brought the total sum with which she began to $5,000.00. The chancellor said:

> "As a result of the appraisals of the real estate by the court-appointed firm of O'Conor and Flynn, the evaluation of their assets is reduced so that the total assets of Mrs. Blumenthal is $262,268.85 and in the case of Mr. Blumenthal, $231,186.69. (These figures are as accurate as can possibly be computed.)
> "There is no evaluation of privately owned stock in private corporations."

The court further found:

> "The dividend income which she now receives is

$7,148. * * * The assets accumulated by Mrs. Blumenthal were principally the results of the efforts of the Blumenthal family with the exception of relatively small investment on her part. The wife at this time may be said to be independently wealthy. It seems to this Court that it would be fair and equitable to set alimony taking into consideration the income that the wife now has by way of dividends, etc., which are directly attributable to Mr. Blumenthal's largess over a period of twenty-seven years."

That the wife may not be happy with this characterization of "largess" is perhaps indicated by her comment relative to jewelry given to her by her husband:

"There are only a couple of items there of any real value but Mr. Blumenthal admits he only bought thirty-two pieces of jewelry in over twenty-seven years."

She gave the insured value of "the larger items of jewelry, worth more than $500 each", owned by her as $12,350.00.

It was the contention of the wife that the husband's income was substantially in excess of that found by the chancellor and confirmed by the independent accountant designated by the chancellor. The charges relative to "unclean hands" arose when it developed on cross-examination of the wife that she and certain advisors other than counsel had conferred with special agents of the Intelligence Division of Internal Revenue Service, advising them that the husband's income for federal income tax purposes had been understated by approximately a quarter of a million dollars per year for each of three successive years. It appears that there was no basis in fact for this allegation. The husband vigorously contends that this conduct of the wife under the "clean hands" doctrine should bar her from alimony. He then reaches out to contend that it in fact amounts to constructive desertion since "the Wife, by her completely false charges of In-

come Tax fraud, has surely rendered it impossible for the Husband to continue the marriage with 'self-respect, health and safety'."

The husband rests his contentions on *Berman v. Berman,* 191 Md. 699, 62 A. 2d 787 (1948) ; *Meeks v. Meeks,* 189 Md. 80, 54 A. 2d 334 (1947) ; and *McClees v. McClees,* 162 Md. 70, 158 A. 349 (1932). He might well have also cited *Pratt v. Pratt,* 245 Md. 716, 228 A. 2d 611 (1967), since one of the digests shows that case as saying that divorce was properly denied there under the "clean hands" doctrine. It should not be so cited. Although the opinion of this Court quoted extensively from the opinion of the chancellor who had determined that neither party was entitled to a divorce under the "clean hands" doctrine, the sole issue before this Court was the question of custody of the minor children. In that case the chancellor took into consideration the fact that the wife admitted at one point in her testimony that earlier in the same case she had testified falsely under oath.

In *Berman, supra,* Judge (later Chief Judge) Henderson said for the Court:

> "In the view we take of the case, it is unnecessary to decide whether the doctrine is applicable in a divorce proceeding, a question expressly left open in *Meeks v. Meeks* [*supra*]. Assuming, without deciding, that it is applicable and broader than the doctrine of recrimination (*Saltzgaver v. Saltzgaver,* 182 Md. 624, 627, 35 A. 2d 810), we think the rule could not be applied under the facts of this case." *Id.* at 704.

In *Space Aero v. Darling,* 238 Md. 93, 208 A. 2d 74 (1965), Judge Oppenheimer said for the Court:

> "The clean hands doctrine is one resting in the sound discretion of the court; it is applied, not for the protection of the parties, but for the court's own protection. *Niner v. Hanson,* 217 Md. 298, 309, 142 A. 2d 798 (1958). *Thomas v.*

*Klemm,* 185 Md. 136, 142, 43 A. 2d 193 (1945)."
*Id.* at 120.

In *Niner v. Hanson,* 217 Md. 298, 309, 142 A. 2d 798 (1958) ; *Bennett v. Westfall,* 186 Md. 148, 155, 46 A. 2d 358 (1946) ; and in *Sherwood Co. v. Distilling Co.,* 177 Md. 455, 465, 9 A. 2d 842 (1939), reference is made to the oft quoted principle that the maxim "has nothing to do with retribution or punishment, or with disapproval of the character or past behavior of the applicant, but only with the effect of his present application."

In *Meeks v. Meeks, supra,* Judge (later Chief Judge) Markell at page 87 quoted *Loughran v. Loughran,* 292 U.S. 216 (1934), to the effect that "equity does not demand that its suitors shall have led blameless lives."

Assuming, without deciding, that the doctrine is applicable in a divorce proceeding, then as indicated by Judge Oppenheimer in *Space Aero v. Darling, supra,* if we were to find that the wife has unclean hands, it would still rest in the sound discretion of the chancellor as to whether the doctrine should be applied. In this instance we are not obliged to decide whether the wife's conduct amounts to unclean hands since, assuming *arguendo* that her conduct does come within the purview of the doctrine, it clearly appears upon the facts of this case that there has been no abuse of discretion on the part of the chancellor. The contentions of the husband on this subject were specifically raised in his argument at the end of the wife's case.

The husband's contention that his wife is guilty of constructive desertion by falsely charging him with income tax evasion and, therefore, not entitled to alimony, must likewise fail. Courts of equity have inherent power, independent of authority to grant a divorce, to entertain and grant an application by a wife against her husband for alimony where he is at fault. *Dackman v. Dackman,* 252 Md. 331, 345, 250 A. 2d 60 (1969). It is necessary in such case that facts be shown which would entitle the wife to a divorce *a vinculo* or *a mensa. Jester v. Jester,*

246 Md. 162, 170, 228 A. 2d 829 (1967). Where both the husband and wife are guilty of marital offenses of equal magnitude, each spouse is precluded from obtaining a divorce from the other. *Matakieff v. Matakieff*, 246 Md. 23, 35, 226 A. 2d 887 (1967), and *Courson v. Courson*, 208 Md. 171, 117 A. 2d 850 (1955). Therefore, such conduct would bar alimony. In this instance if the conduct of the wife amounted to constructive desertion, it would date from the time of that conduct which was a short time prior to trial. Accordingly, it would not be grounds for divorce *a vinculo*, but for divorce *a mensa*. The wife established that the husband was guilty of conduct which would be grounds for her to receive an *a vinculo* divorce. A cause for a divorce *a mensa* will not avail by way of recrimination against a cause for an absolute divorce. *Courson v. Courson, supra*, and cases there cited. Even if we assumed, without deciding, that where one spouse without just cause has departed the home that the thus deserted spouse can then be guilty of conduct amounting to a constructive desertion, the husband would not be enabled here to bar the wife's claim for alimony under the recrimination doctrine because of her constructive desertion.

No useful purpose would be served in further reviewing the facts and the allegations relative to alimony. The criteria to be used have been set forth countless times. They were succinctly stated by Judge (now Chief Judge) Hammond in *Newmeyer v. Newmeyer*, 216 Md. 431, 140 A. 2d 892 (1958), as follows:

> "[I]n reviewing the award of alimony by the chancellor * * * the factors to be considered * * * [are] the husband's wealth and earning capacity, the station in life of the parties, their physical condition and ability to work, the length of time they have lived together, the circumstances leading up to the divorce and the fault that destroyed the home * * *." *Id.* at 434.

It is obvious in this case that the chancellor very care-

fully considered all of these criteria. In *Lopez v. Lopez*, 206 Md. 509, 112 A. 2d 466 (1955), Judge Delaplaine said for the Court:

> "[T]he [alimony] award should not be disturbed unless the chancellor's discretion was arbitrarily used or his judgment was clearly wrong. *Westphal v. Westphal*, 132 Md. 330, 334, 103 A. 846; *Mariani v. Mariani*, 189 Md. 283, 289, 55 A. 2d 713; *Brown v. Brown*, 204 Md. 197, 206, 103 A. 2d 856." *Id.* at 520.

Careful review of this record does not convince us that the chancellor's discretion was arbitrarily used nor does it convince us that his judgment was clearly wrong.

> *Decree affirmed; appellant Sydney C. Blumenthal, Jr., to pay the costs.*